### Peter McConomy's Estate.  Henry Carpenter's Appeal.

*Will—Construction of—Distribution—Debt of legatee.*

Testator by his will directed that the residue of his estate should be divided into seven equal shares for his seven children.  In a codicil he recited that he had given his son Henry R. an equal share of his property, but that owing to change of circumstances he had "concluded to give a portion of his share, viz : an amount sufficient for a repayment to St. Catharine's Roman Catholic Church, in Drumore Township, in this county, $710.44 and the additional of $189.56 for the payment of some other of my debts, making an aggregate sum of nine hundred dollars to be deducted from his share, and the balance remaining of said share to be paid to my daughter-in-law, Mary McConomy, wife of said H. R. McConomy, for the support, maintenance and education of the children and wife of said H. R. McConomy, entirely free from any liability from the debts of said H. R. McConomy.  This amount to be in full for the equal share to have been paid the said H. R. McConomy arising from my estate."  *Held*, that testator's intention, in order to preserve equality among his children, seems to have been to charge Henry's share with $900, which testator had paid for him ; and as Henry's share was more than $900, the proper plan of distribution is to treat the $900 as if paid to the estate, then make an equal distribution among the other six children and Henry's wife, and deduct the $900 from her share.

*Principal and surety—Appointment of trustees—Jurisdiction.*

Where a trustee appointed by the orphans' court has given bond, and subsequently squanders the estate, his sureties cannot object, when called upon to make good the loss, that the court had no jurisdiction to appoint their principal trustee over the estate.

Argued May 24, 1895.  Appeal, No. 362, Jan. T., 1895, by Henry Carpenter, from decree of O. C. Lancaster Co., dismissing exceptions to auditor's report.  Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ.  Decree modified.

Exceptions to auditor's report.

From the record it appeared that the material portions of testator's will were as follows :

" 3. After the death of my wife, Rebecca, let the real estate and personal property be sold, or, if it can, be divided to the satisfaction of the heirs, so that each shall receive the amount that should be apportioned to them. . . .

" 6. After the foregoing amounts have been deducted then

let the real estate and personal property be divided into seven equal shares, viz :

"1st. Augusten, J.; 2d. Ambrose ; 3d. Anastasia; 4th. Mary; 5th. Henry R. ; 6th. Peter ; 7th. Rebecca."

Testator made a codicil to his will as follows :

" Whereas, by my last will and testament dated the second of March, A. D. 1874, I gave to my son, H. R. McConomy, an equal share in the division of my property at the death of their mother, in common with his brothers and sisters, but circumstances having since transpired rendering a change necessary, I have concluded to give a portion of his share, viz : An amount sufficient for the repayment to St. Catharine's Roman Catholic Church, in Drumore township, in this county, $710.44 and the additional of $189.56 for the payment of some other of my debts, making an aggregate sum of nine hundred dollars to be deducted from his share, and the balance remaining of said share to be paid to my daughter-in-law, Mary McConomy, wife of said H. R. McConomy, for the support, maintenance and education of the children and wife of said H. R. McConomy, entirely free from any liability from the debts of the said H. R. McConomy. This amount to be in full for the equal share to have been paid the said H. R. McConomy arising from my estate. And I ratify and confirm my aforesaid will in all respects, except so far as changed by this codicil. In testimony whereof I have here signed, sealed, said codicil in the presence of the undersigned witnesses on this third of January, 1877."

The auditor, William Augustus Atlee, Esq., reported as follows :

"Peter McConomy died Jan. 5, 1877, testate, leaving a widow, Rebecca McConomy, and seven children—the Rev. Augustine J. McConomy, Ambrose McConomy, Anastasia, wife of Henry Z. Rhoads, Mary, wife of Charles J. Gillespie, Henry R. McConomy, Peter McConomy and Rebecca McConomy. Of these children there have since died Augustine J. McConomy, intestate, unmarried and without issue, on July 7, 1878 ; Ambrose McConomy, whose administratrix is Lucy A. McConomy, on Dec. 4, 1886 ; Henry R. McConomy, on Feb. 15, 1890, leaving children, Peter J. McConomy, Henry R. McConomy, Albert J. McConomy, James F. McConomy, Mary McConomy, Carrie McConomy and Neal McConomy, the last five minors, whose

guardian is Michael Reilly; Peter McConomy, whose adminis-
tratrix is Alice E. McConomy, on March 6, 1884. Peter Mc-
Conomy's will was dated March 2, 1874, with a codicil dated
Jan. 3, 1877, was proved Jan. 30, 1877, and letters testamen-
tary thereon issued to Ambrose McConomy; on his death let-
ters of administration d. b. n. c. t. a. were issued Dec. 8, 1886,
to Henry R. McConomy; and, on his death, letters of adminis-
tration d. b. n. c. t. a. were granted Feb. 22, 1890, to Henry Z.
Rhoads, the accountant.

"Rebecca McConomy, wife of Peter McConomy, died July 17,
1893. After her death Mr. Rhoads sold the real estate, col-
lected the assets and filed his account, which was confirmed
June term, 1894, showing a balance in his hands $25,320.65;
since then he has received rents $22.50 and expended $8.00,
making the amount in his hands for distribution $25,335.15.

"A claim was presented before the auditor arising as follows:

"William Whelan, late of the city of Philadelphia, deceased,
by his will dated March 24, 1863, bequeathed one eighth part
of his estate to his executors and the survivor of them in trust
for the sole and separate use of Catharine Smith and Ellen A.
Sheaff during their lives with remainder to their children.

"The will was proved in the city of Philadelphia, letters
testamentary issued there and this trust fund came into the
hands of Thomas Feran, of the city of Washington, D. C., one of
the executors, who executed the duties of the trust until he died,
about the year 1873. After his death, on June 30, 1873, Ellen
A. Sheaff and Catharine Smith, cestuis que trustent, presented
their petition to the court of common pleas of Lancaster county,
setting forth the facts and praying the court to appoint Am-
brose McConomy trustee instead of the deceased trustee. The
court appointed him and on the same day approved the bond of
the new trustee.

"After the death of Ambrose McConomy, the trustee thus
appointed, Ellen A. Sheaff, one of the cestuis que trustent, pre-
sented her petition to the court of common pleas of Lancaster
county, setting forth the facts, praying the court to award a
citation to Lucy A. McConomy, administratrix of the estate of
Ambrose McConomy, commanding her to exhibit an account
of the trust fund or show cause why the same should not be
done. On Feb. 10, 1893, the citation issued; on June 20,

1893, Mrs. McConomy filed the account which was duly confirmed at the August term, 1893, showing a balance due Ellen A. Sheaff $5.398.32, and a balance due Catharine Smith $5,483.24, and adds a note, 'The accountant asks allowance out of the above fund, the amount of fees paid to prothonotary . . . . $9.89, also counsel fees for H. B. Swarr and I. C. Arnold professional services in filing this account.' These counsel fees are fixed by the auditor at fifty dollars ($50.00). One half of these additional charges must be deducted from each, leaving due to Ellen A. Sheaff $5,368.38 and to Catharine Smith $5,453.29. On July 7, 1894, the People's Trust, Savings and Deposit Company was duly appointed by the court of common pleas of Lancaster county trustees of these funds; the proceedings are recorded in Trust Book No. 6, pp. 125, 145.

"The People's Trust, Savings and Deposit Company, trustee, claims to be paid these amounts out of the fund now for distribution, as the decedent, Peter McConomy, was one of the sureties of Ambrose McConomy, as trustee, in a joint and several surety bond, and Ambrose McConomy, as is admitted, died entirely insolvent and without any assets.

"This is objected to on two grounds: One that Ellen A. Sheaff and Catharine Smith, the cestui que trustent, are daughters of Charles Gillespie, the other surety, who died some years ago, and from whose estate they received their distributive shares. This objection is of no validity; if there is any claim it must be by the administrator of Peter McConomy's estate against the administrator of Charles Gillespie's estate for contribution, if this estate is ultimately obliged to pay these claims; the distributees cannot be brought in this proceeding.

"The other ground of objection is far more serious. William Whelan lived and died in Philadelphia; the orphans' court of that county had sole jurisdiction of the estate and the proceedings therein; the bequest was to the executors of the will eo nomine; Thomas Feran received the funds as one of the executors. And yet after his death the petition for the appointment of his successor is presented to the court of common pleas of Lancaster county, and the appointment is made by that court of Ambrose McConomy, who accepted the trust and received the funds of the trust estate.

"Now where the testamentary trust is given to the executors

virtute officii, jurisdiction is exclusively in the orphans' court. Wapple's App., 74 Pa. 100 ; here the appointment was made by a court of common pleas. The orphans' court of Philadelphia county having jurisdiction of the estate, a court of Lancaster county took jurisdiction and appointed the trustee whose surety is now asked to be held liable for the loss of the trust estate. Can he be so held?

" Before entering upon this question it will be well to ascertain the status of the fund ; part of which is strictly the proceeds of personal estate, part of purchase money of real estate held as such by Peter McConomy in his lifetime, and sold by the administrator under power given in the will, and part the proceeds of real estate bought by the trustee to save investment and sold by him. The first and third are clearly personal estates. And the second is also under our decisions in Pennsylvania.

" Mr. McConomy in his will directs ' After the death of my wife Rebecca, let the real estate and personal property be sold or, if it can, be divided to the satisfaction of the heirs so that each shall receive the amount that should be apportioned to them.' He also directs ' After the foregoing amounts,' legacies to certain parties, ' have been deducted then let the real estate and personal property be divided into seven equal shares.'

" Among the decisions of our own Supreme Court the following seem to be particularly applicable to the language of this will.

" A conversion of real estate will be implied when there has been a blending of real and personal estate so as to show that the testator intended to create a common fund out of both real and personal estate, and to bequeath the fund as money : Hunt's App., 105 Pa. 128 ; Marshall's Est., 147 Pa. 77.

" The rule is too well settled to need the citation of authorities that an express and explicit direction by the will to sell the real estate of the testator and divide the proceeds works a conversion of it into personalty on his death. In this case there was an express direction to sell. The fact that it further permitted one of his sons, at his option, to take it at the valuation to be made, did not change the effect of the direction to sell. Whether or not a son required it, it was nevertheless a sale, and the one taking it became a purchaser. Until that period of time it continued personalty : Laird's App., 85 Pa. 339.

" An absolute direction to sell lands after the death of a testator's widow, and to divide the proceeds among his children, effects an equitable conversion thereof into personalty. . . . Does the subsequent provision, that, if his heirs shall agree to a division of the estate among themselves, the executor shall not be bound to sell, operate to prevent a conversion? We are of opinion that it does not: Jones v. Calwell, 97 Pa. 42.

" The auditing judge did not discuss the question of equitable conversion for the reason that the sale by the executors worked an actual conversion, and having been brought into court was to be distributed as money and was liable for the testator's debts. In this we think he was clearly right: Appeal of City of Philadelphia, 112 Pa. 470.

" The whole fund now for distribution is, therefore, personalty, and is liable for the testator's debts.

" Has then the trustee for Ellen A. Sheaff and Catharine Smith a right to come in on this fund for money received by the former trustee and lost by him, or can this surety absolve himself from liability by alleging the irregularity of the appointment?

" If the question was for the first time propounded the auditor would be of opinion that this estate is clearly liable. If the representatives of Mr. Feran, the first trustee, had refused to pay the money to the trustee so irregularly appointed, clearly they could not have been compelled to pay it; the appointment might have been considered as void and the trustee removed on application of a trustee appointed by a court of competent authority and jurisdiction. But he was appointed and gave this bond for the faithful performance of the duties of his office, among which duties was the payment of the funds in his hands to his successor in the trust. He received the money and squandered it; his estate is totally insolvent and cannot pay it or any portion of it to the present trustee. This bond is either an official bond properly approved by the court or is a voluntary bond to secure the funds.

" If an official bond, then the trustee and his sureties are estopped from denying its validity and force and must pay it; if a voluntary bond, then it is equally valid and binding. If no bond had been filed in court and these sureties had given a bond directly to the cestuis que trustent to protect them and

save them harmless from loss would not the cestuis que trustent have had cause of action, perhaps to the use of the new trustee, on the bond, and would not the sureties have been held liable ? They surely would have been so held.

"This appointment cannot be questioned by the representatives of Ambrose McConomy or his sureties. The one voluntarily accepted the appointment and assumed the responsibilities and executed the bond, the others voluntarily assumed the liabilities of sureties. The surety is the only one here objecting that, although he voluntarily agreed to be bound as surety under that appointment, the court had no jurisdiction to take this bond, and this after his principal had received and squandered the money. Equity and good conscience forbid such a defense.

"But the question is not for the first time propounded; cases similar, almost identical, have been before our Supreme Court and in every instance, so far as the auditor can find, the sureties have been held liable : Foster et al. v. The Commonwealth, 35 Pa. 148; Franklin v. Hammond, 45 Pa. 507; Wylie v. Gallagher, 46 Pa. 205; Boehmer v. Schuylkill Co., 46 Pa. 452; Doner's Est., 156 Pa. 301.

"The same is held by the courts of other states: Bassett v. Crafts, 129 Mass. 513; Gray v. The State, 78 Ind. 68; Harbaugh v. Albertson, 102 Ind. 69; Pannill's Admrs. v. Golloway, 78 Va. 387; Williamson v. Woodman, 73 Maine, 163; People v. Huson, 78 Cal. 154, and by the Supreme Court of the United States: Bruce v. The United States, 17 How. U. S. 437.

"Mr. Brandt in his work on suretyship and guaranty, vol. 1, sections 42, 43, 44, and 45, states the rule as follows: 'The general rule is that sureties are estopped to deny the facts recited in the obligations signed by them, and this whether the recitals are true or false in fact. Having once solemnly alleged the existence of the facts they cannot afterwards be heard to deny it.'

"On reason and authority therefore the auditor decides that the estate of Peter McConomy, deceased, must pay to the trustee in the estate of William Whelan, deceased, the amounts found due the cestuis que trustent in the account filed by Lucy A. McConomy, administratrix of the estate of Ambrose McConomy, deceased, the former trustee, with interest from May 1, 1893.

" As this exceeds the amount which would come to the
estate of Ambrose McConomy under his father's will, nothing
can be allowed to that estate under the bequest to Ambrose
McConomy.

" Augustine J. McConomy died after his father and before
his mother; his share was a vested interest at the time of his
death and, therefore, must be awarded to the estate of Rebecca
McConomy, his mother, to be paid to an administrator here-
after to be appointed.

" Henry McConomy and Mary, his wife, being both dead, the
share left to her in trust for the children will be given directly
to them.

" The auditor, therefore, reports the following distribution:
Balance in hands of accountant    .    .    .    $25,335.15

### COST OF AUDIT.

| | | |
|---|---:|---:|
| Advertising, New Era,    .    .    . | $    2.00 | |
| "    "    Intelligencer,    .    .    . | 2.00 | |
| "    "    Law Review,    .    . | 2.00 | |
| Library, use of room    .    .    .    . | 4.00 | |
| Counsel, Mr. Malone, Mr. Carpenter . | 350.00 | |
| Clerk of Orphans' Court    .    .    . | 16.50 | |
| Auditor    .    .    .    .    .    . | · 300,00 | 676.50 |
| Leaving    .    .    .    .    .    . | | $24,658.65 |

Which is distributed as follows:

| | | |
|---|---:|---:|
| Lucy A. McConomy, filing trust account    .    . | | $    9.89 |
| H. B. Swarr, Esq., and I. C. Arnold, Esq.,    .    . | | 50.00 |
| The People's Trust, Saving and Deposit Co., Trustee of Ellen A. Sheaff .    . | $5,368.38 | |
| Interest from May 1, 1893, to December 1, 1894    .    .    .    .    .    . | 509.98 | 5,878.36 |
| Trustee of Catharine Smith    .    . | 5,453.29 | |
| Interest from May 1, 1893, to December 1, 1894    .    .    .    .    . | .$    518.05 | 5,971.34 |
| | | $11,909.59 |
| Leaving for distribution under the will .    .    . | | $12,709.06 |
| Amount carried forward .    .    .    .    . | | $12,709.06 |

| | | |
|---|---|---|
| Amount brought forward . . . . | | $12,709.06 |

Which is distributed as follows :

| | | |
|---|---|---|
| The Roman Catholic Bishop of Harrisburg in trust for St. Mary's Orphan Asylum . . . . . . . $ | 600.00 | |
| Less collateral inheritance tax . | 30.00 | 570.00 |
| Collateral inheritance tax . . . . | | 30.00 |
| Rebecca McConomy . . . . . . | | 500.00 |
| | | $ 1,100.00 |
| Leaving for distribution under the bequest of residue . . . . . . . | | $11,609.06 |

Which is distributed as follows :

| | |
|---|---|
| Estate of Rebecca McConomy, deceased, being the bequest to Augustine J. McConomy ⅙ of above, and ⅙ of $900 . . . . . . | $2,121.51 |
| Anastasia Rhoads ⅙ of the above, and ⅙ of $900 | 2,121.51 |
| Mary Gillespie ⅙ of the above, and ⅙ of $900 | 2,121.51 |
| Alice McConomy, adm'x of Peter McConomy, deceased, being ⅙ of above, and ⅙ of $900 | 2,121.51 |
| Rebecca McConomy . . . . . | 2,121.51 |

Children of Henry R. McConomy, being ⅙ of above, balance $1,941.51, less $900 = $1,041.51.

| | |
|---|---|
| Peter J. McConomy . . . . . . | $148.78½ |
| Henry R. McConomy . . . . . | 148.78½ |
| Albert J. McConomy . . . . . . | 148.78½ |
| James F. McConomy . . . . . | 148.78½ |
| Mary McConomy . . . . . . | 148.78½ |
| Carrie McConomy . . . . . . | 148.78½ |
| Neal McConomy . . . . . . . | 148.78½ |

The amounts awarded to the five last named will be paid to Michael Reilly, their guardian.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Henry Carpenter* and *John E. Malone*, for appellants.—This sum of $900 was a charge against his son, made by the testator

for debts due him by the son, and as the son's share exceeded those debts, it became an asset of the estate and should have been distributed to and among all the residuary legatees, including Mary McConomy and her children : Whitman's App., 2 Grant, 323 ; Thompson's App., 42 Pa. 345 ; Hutchinson's App., 47 Pa. 84 ; Strock's App., 158 Pa. 355.

By the provisions of the will of William Whelan, deceased, the trust fund was given to the executors of the will, ratione officii. It was a trust annexed to the office of executor, which Thomas Feran accepted by taking letters testamentary and which he was bound to fulfill. Now where a testamentary trust is given to the executors virtute officii jurisdiction is exclusively in the orphans' court: Wapples' App., 74 Pa. 100 ; Seibert's App., 19 Pa. 49 ; Brown's App., 12 Pa. 333.

The court of common pleas of Lancaster county not having jurisdiction to appoint Ambrose McConomy trustee, that appointment was not merely irregular, but wholly void : Torrance v. Torrance, 53 Pa. 505.

The contract of suretyship is one of mere benevolence, and the liability of the surety is not to be extended by implication beyond the terms of the contract. Such contract must be strictly construed : Bensinger v. Wren, 100 Pa. 500 ; Hutchinson v. Woodwell, 107 Pa. 509 ; Boschert v. Brown, 72 Pa. 372 ; Crum v. Wilson, 61 Miss. 233.

Where the court has general jurisdiction to appoint guardians, executors or trustees, but no jurisdiction in the particular case, bonds given for the purpose of qualifying appointees to serve, are valid. But very different is the case where the court has no jurisdiction whatever of the subject: Murfree on Official Bonds, 259, sec. 362 ; Sigourney v. Sibley, 21 Pick. 101 ; Tinsley v. Kirby, 17 S. C. 1 ; Dickenson v. State, 20 Neb. 72 ; Crum v. Wilson, 61 Miss. 233 ; Boyd v. Swing, 38 Miss. 182 ; Thomas v. Burnes, 23 Miss. 550 ; Tucker v. State, 11 Md. 322.

*George Nauman*, for appellee.—The court of common pleas of Lancaster county had jurisdiction when it appointed Ambrose McConomy as trustee upon the death of Thomas Feran : Stearly's App., 3 Grant, 270 ; Jones's App., 3 Grant, 169 ; Purdon, 1893, p. 2030, Pl. 23, sec. 2 ; Mintzer's Est., 163 Pa. 484.

Ambrose McConomy and his sureties submitted themselves to the jurisdiction of the court of common pleas of Lancaster county: Conant v. Newton, 126 Mass. 105; Harbaugh v. Albertson, 102 Ind. 69; Pannill v. Gallaway, 78 Va. 394; Bruce v. U. S., 17 How. 442; Gray v. State, 78 Ind. 68; Williamson v. Woodman, 73 Me. 166; People v. Huson, 78 Cal. 156; Franklin v. De Priest, 13 Grattan (Va.), 265; Bassett v. Crafts, 129 Mass. 513; Fridge v. State, 3 Gill & Johnson, 103; Kelly v. State, 25 Ohio, 577.

OPINION BY MR. JUSTICE FELL, July 18, 1895:

The intention of the testator at the time of the execution of his will was to make an equal division of the residue of his estate among his children.   There is no indication of a change of purpose, but in order that his intention should not be defeated by what had occurred afterward he directed by a codicil that nine hundred dollars should be deducted from the share of his son H. R. McConomy.   The language of the codicil is not clear, but the testator's intention seems to have been to charge his son's share with an amount which he had paid on his account. He speaks of giving nine hundred dollars of his son's share, but names no one to whom it is given ; and he says it is to be deducted from his share, the balance to be in full for the otherwise equal share to have been given him.   If this was a gift of a portion of the son's share to the other children, the distribution directed is correct; if it was a deduction in the nature of a charge in order to preserve equality among them, it is not correct. The latter view is in harmony with the testator's intention to treat his children alike.   Without this direction there would have been inequality, as by the codicil the share of H. R. McConomy is given to his wife and children free from liability for his debts, and his indebtedness to the estate could not have been deducted from the share which went to them.   The deduction was not for the exclusive benefit of the other children, but in order that their shares should not be reduced by reason of the indebtedness of H. R. McConomy to his father's estate, and that under the change of beneficiaries provided by the codicil they should all be treated alike.   The nine hundred dollars should have been treated as its payment would have been.   It would then have been a part of the estate to be distributed among all the children.   The plan

of distribution adopted gave it to the remaining children, making each of their shares $1,080 greater than that of the wife and children of H. R. McConomy.   If distributed as if the sum had been repaid the share of each of five children would be $2,091.51, and that of the wife and children of H. R. McConomy $1,191.51, and the decree of the orphans' court of January 19, 1895, is now so modified.

The main question in controversy related to the liability of the estate on a bond given by the testator and others to secure the faithful performance of the duties of Ambrose McConomy as trustee under the will of William Whalen.   We are of opinion that the conclusion reached by the learned auditor is correct, and that it is sustained by his very full and able report. ·

The appellant is not in a position to raise the question of the qualification of the new trustee, The People's Trust, Savings and Deposit Company, to act.   It is not a matter which concerns him in the least, and it was not called to the attention of the auditor or the court.   Before the money is paid by the administrator it should be seen that the appointment is properly made.

The decree of the orphans' court as modified is affirmed.