Edwards Estate.

Argued October 7, 1953; reargued April 20, 1954.
Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY,
MUSMANNO and ARNOLD, JJ.

*Joseph H. Head,* with him *H. McD. Ritchey, Graydon, Head & Ritchey, Harvey F. Sloan* and *Griggs, Moreland, Blair & Douglass,* for appellants.

*James A. Bell,* with him *Henry A. Morrow, Jr., Thorp, Reed & Armstrong, Robert E. McCormick* and *Alexander & Green,* for appellee.

*George D. Lockhart,* with him *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

OPINION BY MR. JUSTICE JONES, June 4, 1954:

Mrs. Lela H. Edwards, domiciled in Pittsburgh, died testate leaving to survive her three married daughters, Martha E. Lazear, Lela E. Cook and Katherine E. Nichols, and the widow and children of her deceased son, Harkness. By her will, she bequeathed her residuary estate to her four children in equal shares. However, in order to produce equality among her four children, she directed that, in distribution of the residue, Katherine and Harkness should each be charged with having received a specified sum of money on account of her specific devises and bequests to them of valuable realty and personalty. Harkness having predeceased his mother, his widow and children took one-fourth and three-fourths, respectively, of his stirpal share of the residue under his mother's will.

The question raised by these appeals is whether the federal estate taxes chargeable to the residuary estate should be apportioned, pursuant to the Act of July 2,

1937, P. L. 2762,[1] among the four equal residuary bene-
ficiaries on the supposition that the charges laid by
the will against the residuary shares of Katherine and
Harkness were tantamount to specific bequests of
equivalent sums of the residue to Martha and Lela
although the will contained no declaration to such
effect.

It is, of course, well settled that the Apportion-
ment Act of 1937 raises a presumption that, in any
testamentary disposition of property subject to federal
estate taxes, such taxes are to be apportioned among
the pecuniary or specific legatees and devisees according
to the proportion their shares bear to the whole of the
distributable estate unless a contrary intention is clearly
expressed or indicated by the will: *Harvey Estate,* 350
Pa. 53, 57, 38 A. 2d 262. In view of the presumption
thus created, the basic question here involved is wheth-
er Mrs. Edwards' will contains language clearly indica-
tive of a method of disposing of the residue among the
beneficiaries thereof inconsistent with the idea of
prorating estate taxes against the recipients of such
residuary bequests: see *Harvey Estate,* supra, at p. 56.

The learned auditing judge, concluding that the
testatrix's will did not evidence such an intent, at-
tempted a proration of estate taxes, chargeable to the
residue, among the residuary legatees and entered a
decree *nisi* accordingly. The court en banc (the audit-
ing judge dissenting) sustained exceptions to the de-
cree *nisi* and entered a final decree which awarded to
the four beneficial interests in the residue their equal
shares, subject to the testamentary charge against the
shares of Katherine and Harkness' family, without

---

[1] Superseded by the Estate Tax Apportionment Act of 1951,
P. L. 1405, 20 PS §881. It is the Act of 1937, however, with which
this case is concerned.

resort to the Apportionment Act. From that decree, Katherine and Harkness Edwards, Jr., have appealed.

By Article Three of her will, Mrs. Edwards devised to her daughter Katherine and to Harkness' widow a one-half interest, each, in the testatrix's breeding farm and country estate near Lexington, Kentucky, known as Walnut Hall. She also bequeathed to Katherine and to Harkness' widow by the same Article Three all live stock, crops, equipment and personal property located on Walnut Hall and, respectively, the furniture, furnishings and other similar tangible personal property contained in two specified dwellings at Walnut Hall. In connection with these devises and bequests to Katherine and Harkness' widow, the testatrix provided, in presently material part, by Article Three that, —"In disposing of my estate, *in order to produce equality among my four children* . . . I direct that, by reason of the devises and bequests made by this article of my will the following charges, respectively, shall be made: . . . I direct that . . . the issue of [Harkness Edwards] surviving at the time of my death, per stirpes, *shall be charged with having received* one hundred twenty-five thousand dollars ($125,000) *on account of their share of the residue of my estate.* . . . I direct that [Katherine E. Nichols] *shall be charged with having received* one hundred twenty-five thousand dollars ($125,000) *on account of her share of the residue of my estate* . . ." (Emphasis supplied).

By Article Six, the testatrix disposed of her residuary estate in the following manner: "All the residue 'and remainder of my estate and property . . . I dispose of as follows: I devise and bequeath the same to the trustees named in Article Eight hereof in trust to divide the same into *the same number of equal shares* as the number of my children, Martha E. Lazear, Lela E. Cook, Harkness Edwards and Katherine E. Nichols

who shall be living at the time of my death, provided that, if any of my said children shall be deceased and shall have left issue surviving at the time of my death, the issue of each such deceased child shall be entitled, per stirpes, to the share to which such deceased child would have been entitled, subject to the provisions hereinafter contained, and *one of such equal shares* shall be set apart for the issue of each such deceased child . . ." (Emphasis supplied).

Prior to the Tax Apportionment Act of 1937, it had been uniformly held that the burden of the federal estate tax, as between specific devisees or legatees and the beneficiaries of the residuary estate, was upon the latter in the absence of testamentary direction to the contrary. For a well-considered discussion of the background of the Apportionment Act, its intended scope and effect, see opinion of Judge Klein for the Orphans' Court of Philadelphia County in *Harvey Estate*, 47 D. & C. 12. The federal estate tax, moreover, was not computed merely upon the clear value of the property passing by will but also upon *inter vivos* transfers of the testator whether by gift, trust or other form designed to take effect in possession or enjoyment at or after his death. Consequently, placing the estate tax burden upon the residuary beneficiaries frequently created a serious hardship, especially where such beneficiaries were, as was often the case, the widow, children or other paramount objects of the testator's bounty. It was in this situation that the Tax Apportionment Act of 1937 was passed in order to eliminate, in part, the hardship to residuary legatees resulting from a disproportionate impact upon them of federal estate taxes. That such was the motivation for the Act was recognized by this court in *Mellon Estate*, 347 Pa. 520, 532-533, 32 A. 2d 749, where Mr. Justice STEARNE said,—"Consideration of the incidence of the federal

estate tax and of the provisions of the Act of 1937 make it clear that the purpose of the General Assembly was to relieve distributees of inequalities which might result from the imposition of that tax. The estate tax, unlike the normal State inheritance tax, is a tax upon the property of the decedent. Unless the decedent has otherwise provided by will, payment of the tax is to be primarily the burden of the executors, and the interest of the distributees is to be diminished pro tanto by the payment of the tax prior to distribution."

From a consideration of the harm to be prevented and the remedy adopted to attain the desired end, it seems plain enough that the Apportionment Act was designed to operate as between specific devisees or legatees and the beneficiaries of the residue by charging the former with their fair proportionate share of the estate taxes in relief of the latter upon whom the brunt of the entire tax burden would otherwise fall. But, ordinarily, there is no occasion to prorate estate taxes among the beneficiaries of the residue since to do so would be but an act of mathematical superfluity; and, as observed by Mr. Chief Justice STERN in *Suchan v. Swope*, 357 Pa. 16, 23, 53 A. 2d 116, —"[T]he law is too pragmatic in its philosophy to require the doing of a vain and useless act." There is no difference in amount between a proportionate share of the net residue and a like share of the gross residue diminished by the same proportionate amount of the estate taxes chargeable to residue. The only instance where apportionment of estate taxes among the beneficiaries of the residue makes a practical difference is where the property received by one or more of the residuary legatees or devisees is not subject to estate taxes because such beneficiaries are charities or other exempted institutions whose shares did not contribute to the im-

position of the tax burden. For example, in *Wahr Estate*, 370 Pa. 382, 88 A. 2d 417, the beneficiaries of *six* of the *twelve* equal shares into which the residuary estate was testamentarily divided for purposes of distribution were charities whose bequests were exempt from the federal estate tax and were not, therefore, a responsible cause for any part of the estate taxes imposed. Accordingly, we apportioned the taxes chargeable to the residue to the six shares which were not exempt from the federal taxation. In so holding, we but followed our earlier pronouncement in *Harvey Estate*, supra, where we quoted with approval (p. 58) from Judge Bolger's reasoning in *Harvey's Estate No. 2*, 49 D. & C. 440, 443-444, as to the intent of the Apportionment Act in such regard.

The manner in which Mrs. Edwards' will deals with the disposition of her residuary estate does not properly admit of an application of the Apportionment Act among the beneficiaries of the residue. By Article Nine of her will, the testatrix did direct that the estate and inheritance taxes on the pecuniary legacies bequeathed to retainers and servants by Article Five of her will should be paid from the principal of her residuary estate. But, as to all other *specific* devises and bequests, the estate taxes were apportionable. Accordingly, on petition of the executors, the Orphans' Court, with notice to all parties in interest, prorated the federal estate taxes among the beneficiaries of the specific devises and legacies, not made tax-free by Article Nine. After this proration, there remained $9,784,092.93 of federal estate taxes to be paid out of the gross residue of $14,590,710.33 which left a net residue of $4,806,617.40 for equal distribution among the four residuary legatees, subject, of course, to the specified charge of $125,000, each, against the shares of Katherine Nichols and Harkness' children,

which charges, as we have seen, the testatrix imposed "in order to produce equality among my four children" because of the Walnut Hall devises and bequests to Katherine and Harkness' widow.

The court en banc achieved the desired "equality" by faithfully carrying out the testatrix's direction with respect to the charges against Katherine and the Harkness interest. This, it did by adding the aggregate of the charges ($250,000) to the net residue for distribution and then dividing the total into four equal shares and debiting the shares of Katherine and Harkness with $125,000 each. The direction could not otherwise have been equitably followed. At best, the distribution of the residue could only approach, and not produce, equality in the circumstances. By virtue of the Walnut Hall devises and bequests, Katherine and Harkness' widow received out of Mrs. Edwards' estate property of a net worth of considerably more than the amount of the $125,000 charges to which the testatrix subjected their shares in the residue. When all the various devises and bequests (net after proration of estate taxes) made by the testatrix to her four children are added respectively to the shares received by each in distribution of the residue (as per the final decree of the court below), it will be found that, on the basis of the valuation of the estate's assets for federal taxation, Harkness' widow and children and Katherine will have received a total of approximately $48,000 and $58,000 more than Martha and $74,000 and $84,000 more than Lela.

The reason for this disparity, which, manifestly, is in the appellants' favor, is not difficult to perceive. For the most part, it is due to the fact that the charges of $125,000, each, against the shares of Katherine and of Harkness' children in the residue did not offset the added value (net after proration of taxes) to each of

those interests from the Walnut Hall devises and bequests. The value of Walnut Hall, as settled for federal estate tax purposes, was $1,255,141.62, which valuation the present appellants accepted as a proper basis for the proration of taxes. Deducting therefrom the prorated taxes, the net value of Walnut Hall, its furnishings and equipment, as received by the two beneficiaries without liability for further deduction for taxes or anything else, was $415,000, plus, or a value to each of, roundly, $207,500.

The method of distributing the residue which the appellants advocate would not only violate the plain direction of Article Three of the will but, if given effect, would expand the already existing disparity between the amounts received from the testatrix's estate by Katherine and Harkness' widow and children on the one hand and the amounts received by Martha and Lela on the other. Indeed, the learned auditing judge so recognized when he stated that "This inequality will be . . . increased if the [appellants] Formula is applied."

In order to apportion among the beneficiaries of the residue the estate taxes chargeable to the residuary estate, the appellants allow for the charge of $125,000, each, against Katherine and Harkness' children by adding the aggregate ($250,000) to the *gross* residuary estate (before payment of federal taxes) and then dividing that sum into four equal parts and debiting two of such parts with $125,000 each. On the basis of the four parts so obtained (each of which includes taxes) the appellants prorate the total taxes chargeable to the residuary estate and then separately deduct the four prorated portions of taxes from the respective four parts. The result, according to the appellants, is the net share to which each of the beneficiaries is entitled in distribution of the residue. But, that is not

what the testatrix directed be done. It is the shares in the *residue* that she specifically subjected to the charges of $125,000, each, against Katherine and Harkness' children and not shares in the *gross* residuary estate before payment of taxes. The effect of the appellants' formula for distributing the residue, which the learned auditing judge mistakenly adopted, accentuates the already unequal distribution by increasing the distributive shares of Katherine and of Harkness' children by an additional $41,742.99, each, with corresponding reductions in the shares of Martha and Lela for a total differential in favor of Harkness' widow and children and Katherine over Martha of approximately $132,000 and $142,000 and over Lela of more than $157,000 and $167,000. These increases in the differentials in distribution of the residue among the four children are the direct result of the prorated estate taxes on the $125,000 charges against Katherine and Harkness' children, which taxes Martha and Lela would be made to suffer, and the testatrix's express desire for equality among her four children would thus be thwarted under the appellants' proposed scheme of distribution.

The error of the auditing judge's opinion is still further evident. As appears by Section 3 of Article Four of Mrs. Edwards' will, she had loaned her son-in-law, Harry Cook (Lela's husband), $62,000 which at the time the will was executed had been reduced to $50,000. Here, also, the testatrix provided that "In order to produce equality among my said four children, I direct that my said daughter, Lela E. Cook, shall be charged with having received, *on account of her share of the residue of my estate,* a sum equalling the total of the balance of said loan remaining unpaid at the time of my death . . ." (Emphasis supplied). After the death of the testatrix, the Cook loan was dis-

charged in full by payment to her executors. Under the theory adopted by the auditing judge of prorating taxes because of the charges against Katherine and Harkness, Lela Cook should have had her husband withhold repayment of his loan from Mrs. Edwards and have permitted it to be charged against her share in the residue of her mother's estate. By so doing, the charge against Lela's residuary interest, treated similarly to the charges against Harkness and Katherine, would have been relieved of its share of the prorated estate taxes to the extent of $33,398.62 so that the Cook loan of $50,000 could have been discharged for a net payment of but $16,601.38. Surely, the testatrix intended no such result.

The learned auditing judge fell into fundamental error by deeming the charges of $125,000, each, against Katherine and Harkness' children to be gifts of such amounts to Martha and Lela from the testatrix's residuary estate. This misconception was given expression a number of times throughout the auditing judge's opinion which concluded with the statement that "the additional gifts of $125,000.00 which the testatrix gave to Lela E. Cook and Martha E. Lazear from her residuary estate are subject to apportionment of estate taxes . . . ." If the testatrix had, in fact, carved out of her residuary estate gifts of $125,000, each, to Martha and Lela, such legacies, being specific, would, of course, have been subject to apportionment of estate taxes. But, nowhere does the will contain a gift of $125,000 to either Martha or Lela. Nor did they receive additional gifts of $125,000 from the residue of their mother's estate. What they did receive on account of the charges against Katherine and Harkness was a one-fourth, each, of the $250,000 aggregate of such charges as a part of the distribution of the residue. The auditing judge mistakenly transmuted the charges

against Katherine and Harkness into gifts to Martha and Lela.

Both the language and donative scheme of Mrs. Edwards' will are clearly inconsistent with any idea that estate taxes were to be apportioned among the distributees of the residue because of the charges of $125,000 against the shares of Katherine and Harkness. On the contrary, the testatrix's plainly expressed intent was that Katherine and the Harkness interest should each be charged with $125,000 and not with a greatly reduced sum ascertained through a fictitiously constructed tax apportionment.

Decree affirmed at the appellants' costs.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

The majority, in my opinion, has incorrectly applied the Pennsylvania Apportionment Act of July 2, 1937, P. L. 2762, sec. 1, 20 PS 844, which provides that unless testator directs otherwise in his will the estate tax of the United States ". . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. . . ."

The reason for the enactment and its history is related by Judge KLEIN, of the Philadelphia Orphans' Court, in *Harvey's Estate*, 47 D. & C. 12, the proration was applied in *Harvey's Estate No. 2*, 49 D. & C. 440, which this Court affirmed in *Harvey Estate*, 350 Pa. 53, 38 A. 2d 262. In summary, prior to the Act, the entire federal estate tax was paid out of the residue. The specific devisees and legatees paid nothing. This proved a hardship upon the residuary beneficiaries since, in most instances, such beneficiaries were usually found to be testator's widow, children and his

618

nearer and more dependent relatives. By the proration Act each beneficiary, unless exempted, paid his proportionate share of the federal tax.

Here testatrix did not "direct otherwise". Wherefore the proration Act applied. In Article Nine, however, she exempts all taxes for property disposed of in Article Five, which taxes are directed to be paid out of the residue.

The only question in litigation concerns the method of apportionment of federal estate taxes in respect to the distribution of the residuary estate.

Lela H. Edwards, the testatrix, died seized of real and personal estate assessed for federal estate tax purposes at approximately $16,000,000, against which a tax was assessed and paid by the executors in the amount of $10,854,884.85. The balance for distribution is shown to exceed $4,000,000. By her professionally drawn will, consisting of nine items and a codicil, testatrix, after making bequests and provisions not involved in this litigation, devised real estate, *Walnut Hall, near Lexington, Kentucky,* (subject to a charge of $250,000 hereinafter referred to) and bequeathed personal property to two of her children, Harkness and Katherine. She devised and bequeathed her entire residuary estate equally to her four named children: Martha E. Lazear, Lela E. Cook, Harkness Edwards and Katherine E. Nichols. In devising Walnut Hall to her two children, Harkness and Katherine, testatrix directed in Article Three of the will that Harkness and Katherine should be charged with having received $250,000 *"on account of [their] share of the residue of my estate."* In disposing of the residue testatrix devised and bequeathed same to her four named children. In so charging the shares of the two named children with $250,000, testatrix explains that

it is done "in order to produce equality among my four children."

The effect of this testamentary scheme is clear. The two children, Harkness and Katherine, are devised the real estate, but take it subject to a $250,000 charge. It follows that what they have inherited is real estate upon which there is said charge. Thus the value of what *passes* to them is the value of the real estate *less the charge*. The amount of the charge passes to the other two children. This is true because the $250,000 is to be paid *out* of the shares of the two devisees. Consequently, in my opinion, the two devisees should only be charged, by the tax proration, with the *net* value of what passed to them, viz.: the value of the real estate (so appraised for federal estate tax) less $250,000 and their share in the residue. The other two children should be required to pay their proportion of estate tax on whatever else they inherited, plus the $250,000 charged against their brother and sister. Thus *each* beneficiary pays his proportion of estate tax on whatever he receives. In the words of the Act, they are the persons *"to whom such property is . . . transferred, . . ."*

In seeking to attain what the majority regards as equality among testatrix's four children, in my opinion, it has improperly considered the *tax burden*. It erroneously deducts the estate taxes before division, adds the $250,000 to the net estate, divides by four and deducts $125,000 each from the shares of the two children-devisees. This is clearly error.

The quantum of the gift and the amount of tax payable are two distinct matters. In *Wahr Estate,* 370 Pa. 382, 88 A. 2d 417, we said (p. 387) : ". . . if a testator directed that his estate be divided into two *equal* shares, one of which he bequeathed to a child and the other to a collateral relative, could it be logically con-

tended that the word 'equal' also related to transfer inheritance tax? We think not. . . ." (Italics supplied)

Despite the well established rule that a distributee pays his share of prorated federal estate taxes on *what he inherits,* the erroneous idea of the majority of the court below that the result reaches ". . . *a more proximate equality of distribution* . . ." has, unfortunately, percolated into the majority opinion of this Court. The error of this view is that no *court* has the right to substitute *its* idea of distribution in the place of that provided by the *statute* and *testator.* The majority endeavors to establish what it regards as a *"maximum"* equality. To do this it decides that distribution is to be made *after* all federal estate taxes have been paid out of *residue.* Such theory has no sound basis. Testatrix's testamentary provisions do not warrant such construction and the Act of Assembly does not so provide.

In my judgment, it is error to treat the $250,000 charge as an *advancement.* An advancement is a gift by a parent in his lifetime, to his child, on account of such child's share of the estate, after the parent's decease: *Miller's Appeal,* 31 Pa. 337; *Long's Estate,* 254 Pa. 370, 98 A. 1066; *Harrison's Estate,* 298 Pa. 514, 148 A. 704. When distributing an estate an advancement should be treated as if repayment had been made to the estate and the whole divided, with the advancment deducted from the share of the one advanced: *McConomy's Estate,* 170 Pa. 140, 32 A. 608; *Laughlin Estate,* 354 Pa. 43, 46 A. 2d 477; *Doverspike's Estate,* 61 Pa. Superior Ct. 318. It will be observed, in the case now before us, that $250,000 was never *paid out* by testatrix in her lifetime. At the death it formed part of the estate. Such amount should, therefore, *not* be added to the estate before deduction. Testatrix directed that the $250,000 be treated as if paid out of the

childrens' equal shares of residue which could not be done *until after the death*. A true example of advancement is illustrated in Section Three of Article Four of this will. Testatrix had loaned money to a son-in-law which, if unpaid, she directed should be regarded as an advancement to testatrix's daughter. Had such debt remained unpaid, the amount thereof would have been added to the estate and then deducted from the share of the child whose husband received the loan.

As, in my opinion, the tax proration made by the auditing judge (as herein modified) was accurate, and the decree of the majority erroneous, I would reverse the decree. I, therefore, dissent.

Mr. Chief Justice HORACE STERN concurs in this dissent.