## Shambaugh Estate

*Houck & Barron* and *John B. Schaner*, for petitioners.

LEHMAN, P. J., March 12, 1963.—The questions before us are whether the language of testator's will re-

veals an intent on his part: (1) that the statutory proration of the Federal estate tax shall not take place and, (2) that his testamentary gifts shall be awarded to his beneficiaries without deduction for the Pennsylvania transfer inheritance tax.

John B. Shambaugh, a bachelor, domiciled in Lewistown, Miffllin County, died testate, January 10, 1958. After directing for the payment out of his estate of the expenses of his last illness and funeral, he gave and devised all of his property, real and personal, "in equal shares" to his six sisters, Annie M. Bingman, Hattie F. Derr, Josephine S. Erdley, Maude K. Bowers, Claire S. Gray, Rowena E. Fenstermacher, and to one Helen Smith. In the subsequent paragraph of said will, testator declared "that prior hereto, I have advanced to beneficiaries named herein certain sums of money as follows: to Hattie F. Derr, eighty-one hundred ($8100.00) dollars, to Josephine S. Erdley, two thousand ($2000.00) dollars and to Maude K. Bowers, seventy-five hundred ($7500.00) dollars; and I direct that all such three sums and also all such sums of money as I hereafter shall advance to any of the beneficiaries named herein or as shall be owing to me from any of the said beneficiaries at my decease, shall be taken and considered as respectively parts of the shares of such beneficiaries in my estate under this Will, and shall be accounted for accordingly; and I direct that no legacy or device contained in my Will shall be taken to be satisfaction of any debt owing to me."

Testator further directed "that there shall be deducted from the share of any beneficiary in my estate under this Will, the amount of any money receivable by such beneficiary upon any policy or policies of insurance on my life."

The will concluded with testator naming Harry E. Erdley, his brother-in-law, and Maude K. Bowers, his sister, as executors of his will. The instrument was in

typewritten form, witnessed by a member of the bar and his wife and was executed March 23, 1957. The will contained no tax clause.

Following probate of the will and grant of letters to said named executors, considerable litigation ensued between the co-executors. Ultimately, said executors filed a joint first and intended final account with statement of proposed distribution on April 4, 1959. Said account was confirmed nisi on May 4, 1959, and absolutely on May 9, 1959. The account showed a gross principal estate of $221,184.01 and a gross income of $2,816.25. The account, supported by the separate affidavit of each executor, claimed credit for total payments of $28,479.44 Pennsylvania transfer inheritance tax and $31,792.51 Federal estate tax. On January 27, 1960, the final audit of the Federal estate tax return was completed and this showed a deficiency tax to be due in the amount of $234.98. This amount and $13.70 interest thereon were paid by said executors.

Said first and intended final account as filed by the two fiduciaries disclosed a balance of $143,272.27 of net principal and income for distribution. The statement of proposed distribution attached to said account added the advancements made by testator in his lifetime to three of the residuary legatees, totalling $17,-600, and the additional sum of $2,278 as proceeds of insurance directed by the will to be deducted from the share of the residuary legatee, Claire S. Gray, who had received said sum. Said statement of proposed distribution showed this totaled $163,150.27 and divided said sum into seven equal shares of $23,307.18. The shares of the residuary legatees who received advancements from testator during his lifetime were charged their respective advancements and the shares of the residuary legatee, Claire S. Gray, was charged the amount of insurance received by her following testator's death.

The Federal estate tax return discloses that testator made an advance to each of three of his sisters covering a period of from seven years, two months, four days to one year, two months, eleven days before his death. These three advancements were not included in the gross estate for the purpose of computing the Federal estate tax whereas the proceeds of the life insurance policy on testator's life were included and after audit by the Internal Revenue Service said exclusions were accepted by the Federal Government. The three advancements and the life insurance proceeds were not included among the estate assets to determine the Pennsylvania transfer inheritance tax and the Department of Revenue of the Commonwealth is apparently satisfied with this exclusion.

There was no testimony to indicate any change in the amounts of the advancements appearing in the will. Said statement of proposed distribution made no apportionment among the residuary legatees of Federal estate tax or of the Pennsylvania transfer inheritance tax.

Following the filing of said joint account with statement of proposed distribution, we were requested by counsel for each of said co-executors to approve said statement of proposed distribution and, accordingly, we entered the following decree with the full approbation of counsel:

"Now, April 20th, 1959, it is ordered and decreed that, if there be no exception to the First and Intended Final Account filed in the above matter to the May Term, 1959 or to the Statement of Proposed Distribution filed therewith, then, upon the absolute confirmation thereof and upon the determination and payment of taxes upon the said estate, the said taxes shall be apportioned forthwith by the Orphans' Court of Mifflin County, Pennsylvania and pending such determination, payment and apportionment of taxes and for the sole

purpose of adequate security therefor, distribution shall be suspended of parts of distributive shares as follows:

of share of Annie M. Bingman ........ 2,000.00
of share of Hattie F. Derr ............ 6,000.00
of share of Josephine S. Erdley ........ 6,000.00
of share of Maude K. Bowers ......... 6,000.00
of share of Claire S. Gray ........... 6,000.00
of share of Rowena E. Fenstermacher .. 2,000.00
of share of Helen Smith,
    nee Helen Bigelow ............... 2,000.00

PROVIDED HOWEVER, that, if there be no exception to the said Account or Statement of Proposed Distribution, then, upon absolute confirmation thereof, all distributive shares shall forthwith be paid to the distributees except only the parts of distributive shares whereof distribution is to be suspended as aforementioned.

/s/ Paul S. Lehman
P.J."

This case is before us on the petition of Maude K. Bowers, individually and as co-executor, to review said decree and the decrees confirming nisi and absolutely said account with statement of proposed distribution and on the petition of Helen Smith, one of the residuary legatees, for distribution of the suspended parts of the distributive shares as shown by said account and statement of proposed distribution.

The petition for review alleges that said decrees are inconsistent with Pennsylvania's Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS § 881, and the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, and the equitable principles of contribution, exoneration and marshalling of assets. Said petitioner claims that the Federal estate and transfer inheritance taxes should not be borne by the estate but by the individual legatees

whereby the three residuary legatees who received advancements from testator in his lifetime would pay less Federal estate and transfer inheritance taxes and Claire S. Gray, who received life insurance proceeds, would pay less transfer inheritance tax than the other legatees. Petitioner avers that there remain sufficient estate assets in the possession and control of the executors which will allow for the amendment of said decrees so as to permit this proration of taxes.

The preliminary objections filed to said petition for review by four of the remaining six residuary legatees and Helen Smith's petition for distribution contain, in part, the same allegations. The basic premise of said allegations is that testator's will directed by implication that all death duties incident either to the transmission of decedent's property at his death or to the beneficiaries' receipt of it, that is, both Federal estate tax and State transfer inheritance tax, were to be paid out of the residuary estate so as to effect an equal distribution, that this is what was done by the executors and that the balance remaining should be paid in accordance with the first and intended final account with statement of proposed distribution. Maude K. Bowers filed a responsive answer to this petition.

It is conceded by both factions that distribution has been effected in accordance with the statement of proposed distribution save for the said $30,000, the payment of which was suspended by our decree.

Both the petition for review and the petition for distribution involve the same fundamental questions of determining testator's intention, as disclosed by his will, as to how the Federal estate tax and State transfer inheritance tax were to be paid.

The ". . . state inheritance tax is ordinarily deducted from the distributive shares of the beneficiaries of a decedent's estate. Section 16 of the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2352, expressly

so provides. The tax is on the beneficiary's right of succession to, or the privilege of receiving, either by will or under the intestate law, property possessed by a decedent at his death: Shugars v. Chamberlain Amusements Enterprises, Inc., 284 Pa. 200, 205, 130 A. 426. But, it is also well established that a testator may direct, either expressly or by necessary implication, that his testamentary gifts shall be awarded to his beneficiaries without deduction for the state inheritance tax. Brown's Estate, 208 Pa. 161, 164, 57 A. 360; Spangenberg Estate, 359 Pa. 353, 355, 59 A. 2d 103. Indeed, a decedent's relief of his beneficiary from any deduction on account of state inheritance tax on his legacy may rest *solely* upon testamentary implication . . . The important inquiry in any instance is whether the language of the will involved implies an intent to such effect.

"The requirement of a like testamentary direction or indication in order to place the burden of the federal estate taxes on the residuary estate grew out of this State's first apportionment Act (1937)[1] which was superseded and repealed by the present Estate Tax Apportionment Act of August 24, 1951, P. L. 1405. The Act of 1951, just as its predecessor had done, provides for the apportionment of the federal estate taxes among the persons interested in the property included in the gross estate but confirms to a testator the right to determine by his will how the federal taxes on his estate are to be borne. In construing the Act of 1937, this court held that its effect was to create a presumption (and the conception continues to obtain under the Act of 1951) that a testator intends to have the Act's provisions apply to his estate, recognizing, however, that the presumption prevails 'unless there is in the terms of the will some provision which is clearly inconsistent with such construction, and, when the will is

---

[1] July 2, 1937, P. L. 2762, sec. 1, 20 PS §844.

construed as a whole, will override it.' Harvey Estate, 350 Pa. 53, 56, 38 A. 2d 262; Edwards Estate, 377 Pa. 606, 608, 105 A. 2d 312": Wright Estate, 391 Pa. 405, 409, 410, 138 A. 2d 102, 104, 105. This last paragraph was quoted verbatim with approval in Hoffman Estate, 399 Pa. 96, 99, 160 A. 2d 237, 238.

The purpose of the Apportionment Act of 1937 and the Estate Tax Apportionment Act of 1951, was to achieve equality of contribution and to relieve distributees of inequalities which might result from imposition of the Federal estate tax. The acts were designed to operate as between specific devisees or legatees and the beneficiaries of the residue by charging the former with their fair proportionate share of the estate taxes in relief of the latter upon which the brunt of the entire tax burden would otherwise fall. See Edwards Estate, 377 Pa. 606, 610, 611, 105 A. 2d 312, 314, 315.

The Estate Tax Apportionment Act of 1951 does not apply to State inheritance taxes. See Mellon Estate, 347 Pa. 520, 32 A. 2d 749.

"The incidence of the federal estate tax is upon the property of the decedent: Mellon Estate, 347 Pa. 520, 532, 32 A. 2d 749": Wright Estate, supra, page 410. Prior to the Act of 1937, federal estate taxes uniformly had been paid out of and charged to the general funds of the decedent's estate in the absence of testamentary direction otherwise. "It is clear, therefore, that it is only the legal fiction created by the Apportionment Act as to its own presumed applicability—a presumption which can be overcome by testamentary implication alone (Edwards Estate, supra)—that brings about any controversy concerning the charging of the decedent's federal taxes to his general estate.

"The question, then, is, what did the testator intend, as disclosed by his will, the intent being permissively ascertainable from implication no less than from express direction": Wright Estate, supra, page 411.

It was held in Wright Estate, supra, where, as in the instant case, there was no tax clause in the will, that a study of testator's will clearly evidenced an intention by implication that all death duties incident either to the transmission of decedent's property at his death or to the beneficiaries' receipt of it, that is, both Federal estate taxes and Pennsylvania inheritance taxes, should be paid out of the residuary estate.

In Edwards Estate, supra, it was held that testatrix' direction for equality among her children, which could not otherwise be equitably followed, precluded any statutory apportionment among residuary legatees; although as to legacies to servants, not in controversy, there was an express direction against apportionment. Mrs. Edwards made specific devises and bequests to one of her children and to the widow of a second and the residue was divided equally among all four children. In order to "produce equality among my four children", testatrix directed that each of said donees should be charged with having received $125,-000 "on account of her share of the residue of my estate . . ." It was held that taxes were to be deducted before computing residue and charges on the two shares were deducted from such portions. Both the language and donative scheme of Mrs. Edwards' will were clearly inconsistent with any idea that estate taxes were to be apportioned among the distributees of the residue because of the charges of $125,000 against each of the shares of the one child and the widow of a second.[2]

In the interpretation of a will the intention of the

---

[2] Accord: Allen's Estate, 125 Cal. App. 2d 502, 270 P. 2d 510, a provision by testatrix that child of her first marriage should receive exactly the same share as received by children of her second marriage, fairly indicated intent not to prorate Federal estate tax, as provided for by statute, where proration would result in first child's paying greater tax than the others.

testator is the pole star and that intention must be ascertained from a consideration of the entire will and all the surrounding and attendant circumstances: Newlin Estate, 367 Pa. 527, 80 A. 2d 819.

Wahr Estate, 370 Pa. 382, 88 A. 2d 417, cited by counsel for Mrs. Bowers, is not controlling in the present situation because there were no advancements and, accordingly, no provision that the advancements were to be included as parts of the respective shares of such beneficiaries in testator's estate as was the situation in the instant case. In Wahr Estate, the beneficiaries of 6 of the 12 equal shares into which the residuary estate was testamentarily divided for purposes of distribution were charities whose bequests were exempt from the Federal estate tax and were not, therefore, a responsible cause for any part of the estate taxes imposed. Accordingly, the taxes chargeable to the residue were apportioned to the six shares not exempt from the federal taxation.

Mr. Shambaugh specifically provided that the advancements and life insurance proceeds were to be charged against the respective shares of said beneficiaries so as to permit a division of not only his estate but of his inter vivos gifts and insurance benefits into seven equal parts, one for each of his six sisters and the seventh for Helen Smith. To further effect absolute net equality among the seven beneficiaries, he provided that any additional advancements made by him after the execution of his will were to be charged against the beneficiary receiving same and that regardless of the amounts previously advanced or to be advanced, the amount owing to him by each beneficiary at the time of his death was to be regarded as part of the share of said beneficiary in his estate under his will and to be accounted for accordingly.

Testator thereby clearly stated that for equality in distribution all advancements he had heretofore made

and any he would thereafter make, less any repayments by the recipients thereof, together with the proceeds of any life insurance policies upon his life, would be considered as part of his estate. It would be incongruous for each of the three beneficiaries of the advancements to be exonerated from paying a portion of the Federal estate tax while the beneficiary who received proceeds from a life insurance policy upon Mr. Shambaugh's life and the two other sisters and Helen Smith who received no advancements would each pay a larger portion of said tax.

If the proration provisions of the Estate Tax Apportionment Act of 1951 are invoked this would be the result because the advancements are not includible in decedent's gross estate for Federal estate tax.

Unless the State inheritance tax is paid out of the estate, inequality would result and this would be contrary to the testamentary implication.

The co-executors, in stating their proposed distribution to their first and intended final account, added the advancements and life insurance proceeds to the balance for distribution and subtracted from the distributive share of each of said beneficiaries the respective amount of advancement or insurance proceeds received by her. While this method of accounting produces the correct result, advancements should be treated as if repayment had been made to the estate and the whole divided with the advancement deducted from the share of the one advanced.

The method of adding advancements to the net estate and dividing the aggregate into equal shares with deductions to be made from the respective shares for such advancements is called hotchpot and is followed where testator's intention is thus indicated. See Laughlin Estate, 354 Pa. 43, 46 A. 2d 477. This method forbids the addition of tax-free dollars of charges or advancements to any but tax-free dollars of estate funds. It prevents

the dimunition of an "equal share" by an unequal tax.

The donative scheme clearly expressed in Mr. Shambaugh's will implies that all death taxes are to be paid from the estate so as to permit the balance to be divided into seven equal shares. There were no specific legacies or devises. All beneficiaries are individuals and the rate of death taxes is the same as to each. The entire net estate was to be distributed in seven equal shares. Testator's direction that the *advancements* "as shall be owing to me from any of the said beneficiaries at my decease, *shall be taken and considered as respectively parts of the shares of such beneficiaries in my estate under this Will,* and shall be accounted for accordingly;" required the co-executors to include said advancements as part of the estate. (Italics supplied.) Once included as part of the estate, it is immaterial whether either or both the Estate Tax Apportionment Act of 1951 and the Pennsylvania Transfer Inheritance Act of 1919, are invoked because the result would be that each beneficiary would pay an equal share of each tax. This observation was cogently stated in Edwards Estate, supra, at page 611:

". . . [O]rdinarily, there is no occasion to prorate estate taxes among the beneficiaries of the residue since to do so would be but an act of mathematical superfluity; and, as observed by Mr. Chief Justice Stern in Suchan v. Swope, 357 Pa. 16, 23, 53 A. 2d 116, 119— '[T]he law is too pragmatic in its philosophy to require the doing of a vain and useless act.' There is no difference in amount between a proportionate share of the net residue and a like share of the gross residue diminished by the same proportionate amount of the estate taxes chargeable to residue . . ."

While it is true that testator did not expressly provide that the proceeds of the life insurance policy were to be considered as a part of the share in his estate of the beneficiary receiving same, he did state that said

proceeds were to be deducted from said share. By implication and in keeping with his testamentary scheme, he manifested an intention that for distribution purposes said proceeds were to be a part of his estate. Actually, said proceeds were a part of his estate for Federal tax purposes, although not for State inheritance tax purposes. However, it is clear by testamentary implication that testator intended that all death taxes be paid out of his estate before calculating the distributive shares so as to permit an equal division among his beneficiaries. Such an equal distribution is eminently fair and in full accord with the language of testator's will.

The petition for review was filed pursuant to section 721 of the Fiduciaries Act of 1949 [3], 20 PS §320.721, which provides that the orphans' court shall give such relief as justice and equity require of undistributed property upon petition of any party. While the language used in the statute is imperative, it is well settled that a review will be granted only in accordance with the general principles governing bills of review in ordinary equity practice: Bailey's Estate, 291 Pa. 421, 140 Atl. 145; Commonwealth, to use, v. Toebe, 315 Pa. 218, 173 Atl. 169.

But there is nothing in the instant case that requires relief. The first and intended final account filed by the co-executors and confirmed nisi and absolutely claims credit for payment of both the Federal estate tax and State inheritance tax by the executors from estate assets. The statement of proposed distribution attached to said account makes no apportionment to or deduction of either tax among the residuary legatees.

As previously stated in this opinion, we believe testator intended that all death taxes be paid out of his estate without apportioning them to or deducting them

[3] April 18, 1949, P. L. 512, art. VII, sec. 721.

from the distributive shares of the beneficiaries. Consequently, all of our decrees are in accord with this holding and need not be reviewed. . . .