## Roth Estate

*Maurice R. Metzger*, for accountant.

*David M. Wallace, McNees, Wallace & Nurick*, for exceptants.

*Samuel Handler*, guardian and trustee ad litem.

*Earl Handler*, for guardian and trustee ad litem.

RICHARDS, P. J., July 26, 1956.—Horatio S. Roth died testate on November 25, 1952. Letters testamentary were issued to the Farmers Trust Company of Middletown. In addition to his testamentary estate, he had three inter vivos trusts, one with the Farmers Trust Company of Middletown, one with the Dauphin Deposit Trust Company of Harrisburg and one with the Harrisburg Trust Company of Harrisburg. The last trust has been terminated by its terms and distribution made. Decedent was a widower at the time of his death. His only child predeceased him, but he was survived by three grandchildren, all now of age. These grandchildren and present and prospective great-grandchildren are the chief beneficiaries of his testamentary estate and of the inter vivos trusts.

Executor presented a petition asking us to prorate taxes. We appointed Samuel Handler, Esq., guardian ad litem for two minor great-grandchildren in being, and trustee ad litem for unborn great-grandchildren and others who may have an interest in the proceedings. A citation was then issued and served on all interested parties. Answers being filed, a hearing was held and argument heard.

### Discussion

The Estate Tax apportionment Act of August 24, 1951, P. L. 1405, 20 PS §881 et seq., provides, inter alia, that the estate tax shall be apportioned among all persons interested in property includible in the gross estate (sec. 2), except as provided in sec. 3(a), 20 PS §883(a).

Section 3(a) reads as follows:

(a) Powers of Testator or Settlor. A testator, set-

tlor, or possessor of any appropriate power of appointment may direct how the estate tax shall be apportioned or allocated. . . . Any such direction shall take precedence over the provisions of this act insofar as the direction provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the direction. . . ."

It has been argued that the will of decedent imposes the tax on the testamentary estate and that, consequently, by section 3 (a) of the act, the tax may not be apportioned.

In this connection, it may be observed that:

"The act creates a *presumption* that a testator intends that proration should be made in accordance with its terms unless his will contains a specific provision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import": Stadtfeld Estate, 359 Pa. 147, 152. See also Harvey Estate, 350 Pa. 53, 56.

Bearing this admonition in mind, we turn now to consideration of the will. In item 1, it is provided:

"I direct my executor . . . to pay . . . the transfer inheritance taxes and estate taxes on my estate and on the legacies and devises given in this will. . . . I direct that the trust fund created by me under a deed of trust at the Farmers Trust Company of Middletown shall be kept intact for the benefit of my grandchildren and in order that this may be done I direct that my executor and trustee shall use for the payment of all the aforesaid taxes any and all bonds I have provided for that purpose during my lifetime in my special tax account including the G bonds which will be found in my box at my death. I also direct my executor and trustee to use the income from the real estate and leasehold property trusts hereinafter

created to pay any balance due on said taxes as hereinafter directed, if the aforesaid special tax account is not sufficient for that purpose.

"My intent and purpose is that the real estate and leasehold properties left by me at my death shall not be sold for the purpose of paying any estate or inheritance taxes on my estate or on the bequests and devises given by me . . . but that the income from the real estate and leasehold properties shall be used for that purpose, if those taxes cannot be paid otherwise."

That decedent was conscious of estate tax is evidenced by the fact that he made provision to pay it, and by the fact that he provided that the inter vivos trust at the Farmers Trust Company at Middletown should not be liable therefor but should be kept "intact". Therefore, when he provided that the transfer and estate tax "on my estate" should be paid, he meant more than his testamentary estate. Since he did provide for the payment of those taxes on his testamentary estate specifically, he meant more than that when he included also the provision to pay the taxes "on my estate", and connected the two provisions with the conjuncion "and". He provided a tax account, including G bonds, and the income from realty and leaseholds, as a fund or funds to pay the tax. His expressed "intent" not to sell real estate is not as forceful as the word "direct" which he uses elsewhere in this section. But we do not consider it necessary here to decide how the tax shall be paid if the funds provided are not sufficient to pay the tax at once. Our problem is to see whether or not he provided and directed that the tax should be paid from his testamentary estate or should be prorated.

In item 2 of his will he directs his testamentary trustee to pay that portion of any estate and inheritance taxes on his estate and on bequests and devises which cannot be paid from his special tax account,

and directed that all of his real estate and leasehold properties be carried in one trust account until "all of said taxes are paid in full".

In item 3 he provides: "After all the aforesaid taxes . . . have been paid or provided for in full out of the income from the real estate and leasehold properties, I direct" . . . that three separate trusts be created from the real estate for the three grandchildren.

In item 4 he provides: "After all the taxes hereinbefore referred to . . . . have been paid or full provided for out of my estate or income therefrom, I direct", that other dispositions be made of the rents.

In item 8, he provides for the sale of certain property the proceeds to be used, with that from other sources, to pay transfer or inheritance taxes and Federal estate taxes *"on my entire estate"*, and on bequests and devises.

In item 11, he directs that income from real estate and leaseholds held under the testamentary trust shall be applied to the balance which may be due for *taxes of any kind whatsoever.*

We feel that these testamentary provisions are clear and unambiguous, that they manifest an intent to charge the testamentary estate with the payment of all taxes due and that, consequently, the tax may not be apportioned among the inter vivos trusts and the testamentary estate.

This conclusion is somewhat fortified by the fact that no provision is made in the inter vivos trusts for the payment of taxes. Furthermore, on October 12, 1944, the inter vivos trust at the Farmers Trust Company of Middletown was amended to allow the payment of $125,000, inter alia, of estate and inheritance taxes "on my estate". However, this was revoked in 1947, the day before his will was dated. This clearly shows an intent to let the provisions of the will supercede any provisions to the contrary.

We, therefore, conclude that all of the taxes in question must be paid from the testamentary estate.

### Order

And now, to wit, July 26, 1956, it is ordered and decreed that all inheritance and estate taxes on the entire estate of decedent shall be paid by the testamentary estate of decedent.