Leaver Estate.

Argued January 8, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

reargument refused June 9, 1958.

*Walter B. Gibbons*, with him *Ralph C. Body, Dawson H. Muth, James A. McTague*, and *Body, Muth, Rhoda & Stoudt*, for appellant.

*C. Leo Sutton*, with him *John E. Marx, Leon Ehrlich* and *Dilworth, Paxson, Kalish, Kohn & Dilks*, for appellees.

OPINION BY MR. JUSTICE BELL, March 24, 1958:

This appeal involves the interpretation of a holographic will, which often presents a difficult problem. Warren M. Leaver, a widower, died on July 6, 1953. He left a daughter, Marguerite Leaver Macpeak, who has no children, and a son, Carroll Ritter Leaver, who has one child.

Mr. Leaver in his holographic will dated January 30, 1943, provided pertinently as follows:

"All articles for domestic purpose or utility, household furniture, and furnishings, books and all articles of private possession (excluding only stocks, bonds and/or documentary evidence of investment) as contained in my home, in my safety deposit box, or elsewhere, I hereby bequeath solely and in their entirety, to my daughter, Marguerite Leaver Macpeak, to be kept or disposed of at her discretion.

"Any real estate, stocks, bonds, and/or documentary evidence of investment of which I may die possessed. I bequeath to my daughter, Marguerite Leaver Macpeak, and to my son, Carroll Ritter Leaver, in equal shares, and in the following manner:

"All real estate* shall be sold, at private or public sale at the discretion of my executrix.

"All stocks and/or bonds, shall, wherever possible be divided equally, in kind. Any such division developing an odd share, same may be sold and the proceeds equally divided, or if desirable kept by choice, first, of my daughter, Marguerite Leaver Macpeak, or second by my son, Carroll Ritter Leaver by payment therefor, to my Estate, of the appraised value of such odd share as arrived at for Federal Tax purposes.

"My Executrix shall have complete discretion as to the sale of any stocks and/or bonds for the purpose of acquiring cash necessary to the settlement of taxes or other proper obligations of my Estate."

Testator, in a combination of lay and legal language, then appointed a Trustee for his son's "resulting accrual", and directed that the income from this trust should be paid to his son for his life and after his death to testator's grandson, Carl Andrew Leaver or his legal issue if living, for a further period of 21

---

* Testator owned an undivided interest in several pieces of mineral land at the time he made his will and at his death.

years, and at the end of this period "the Trust shall be concluded and paid forthwith to my grandson, Carl Andrew Leaver, or his legal surviving issue." Testator then provided as follows:

"Should my grandson, Carl Andrew Leaver, predecease my son, Carroll Ritter Leaver, and at such time leave no legal issue, then, upon the death of my son, the Trust shall immediately be concluded and paid forthwith to my daughter, Marguerite Leaver Macpeak, or should she have predeceased my son, then to be paid to Bessie Leaver Nagel, my sister, or her legal heirs.

"I appoint my daughter, Marguerite Leaver Macpeak, my sole executrix, to serve without bond."

Testator left, inter alia, the following assets:

| | |
|---|---:|
| U. S. Postage Stamps (at Inventory valuation) | $2,438.30 |
| Household Furniture (at Inventory valuation) | 934.50 |
| U. S. Coins (at Inventory valuation) | 100.26 |
| Jewelry (at Inventory valuation) | 2,319.50 |
| Hamilton Watch (at Inventory valuation) | 3.50 |
| Cash—in safe deposit box | 15,000.00 |
| Cash—National Bank of Boyertown | 42,688.16 |
| Cash—Florida National Bank | 3,674.29 |
| Cash—due from Boyertown Burial Casket Co.* | 10,285.02 |
| Cash on person | 25.71 |
| | $77,469.24 |

Testator also left securities—composed of stocks, bonds, mineral deeds and installment shares of a Savings and Loan Association—which had an appraised value of $379,768.

---

* Under a very unusual written agreement.

The parties were satisfied with President Judge MARX'S able adjudication (in which he disposed of a number of difficult questions) with two exceptions. He awarded to Mrs. Macpeak, under the paragraph of testator's will beginning with "All articles for domestic purpose. . .", household furniture having an inventory value of $934.50, and jewelry having an inventory value of $2,319.50. Mrs. Macpeak claims that she was entitled, in addition to this property, to the United States Postage Stamps, the United States Coins, the Hamilton watch, cash in safe deposit box, cash in National Bank of Boyertown, cash in Florida National Bank, cash on person and cash due from the Boyertown Burial Casket Company. The articles or property she claims total $77,469.24.

The Court below and each party in this appeal rely on *Beisgen Estate,* 387 Pa. 425, 128 A. 2d 52. In that case, quoting from *Cannistra Estate,* 384 Pa. 605, 607, 121 A. 2d 157, the Court said (page 432) : ". . . ' "The testator's intention must be ascertained from the language and scheme of his will: 'it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words': Britt Estate, 369 Pa. [450, 454, 87 A. 2d 243]": Sowers Estate, 383 Pa. 566, 119 A. 2d 60.' "

However, in that case the factual situation, namely the language of the will, was very different from the language of this will. There the testatrix gave to her daughter "all my personal effects including clothing and household goods". There was no residuary clause. This Court held that the words "personal effects" as used in conjunction with "clothing and household goods" and with no residuary clause, were limited to personal effects and did not include cash or stock.

Mr. Leaver did not merely leave his daughter "All . . . household furniture, and furnishings, books and all articles of private possession . . . as contained in my home, *in my safety deposit box, or elsewhere*", he went further and specified and defined what he meant by "articles of private possession" when he added thereto "(excluding only stocks, bonds and/or documentary evidence of investment)". The will leaves no doubt that Leaver intended to give his daughter **more than** his son, although how much more is of course the debatable question. We believe that he intended his gift of "any real estate, stocks, bonds and/or documentary evidence of investment of which I may die possessed" "in equal shares" to his daughter and his son, to be a residuary clause, and to cover and include everything which he had not theretofore willed his daughter. Furthermore any other interpretation would result in an intestacy if cash was never disposed of by the will; there is not only a presumption against intestacy but it is clear from the testator's will that he intended to dispose of all his property.

Construing the will as a whole, we believe the testator intended to give his daughter all his personal property whether contained in his home or in his safety deposit box or elsewhere excepting and excluding only stocks, bonds and documentary evidence of investment; and to give equally to his daughter and his son (and his son's child and issue) his stocks, bonds and documentary evidence of investment, as well as his real estate. We are, therefore, of the opinion that Mrs. Macpeak was entitled under her father's will to the household furniture and furnishings, the jewelry, the United States Postage Stamps, the United States Coins, the Hamilton watch, and the cash of which he died possessed, namely, the cash on his person and the cash in his safe deposit box and the cash in the National Bank

of Boyertown and the cash in the Florida National Bank, but not to the sum of $9,237.26* representing the amount due the decedent from Boyertown Burial Casket Company under a peculiar building-sale-occupancy written agreement dated November 18, 1947.

Mrs. Macpeak also contends that the discretion given her in the will to sell "any stocks and/or bonds for the purpose of acquiring cash necessary to the settlement of taxes or other proper obligations of my Estate" showed a clear direction and intention to have all Federal Estate Taxes paid out of the stocks and bonds without any apportionment as required by the Estate Tax Apportionment Act of 1951, P. L. 1405, §2, 20 PS §882.

The Federal Estate Tax is to be equitably apportioned among all persons who receive the property of the testator** unless the testator clearly directs, either expressly or by necessary implication, a contrary intention: *Harvey Estate,* 350 Pa. 53, 38 A. 2d 262; *Edwards Estate,* 377 Pa. 606, 105 A. 2d 312. We agree with the learned Auditing Judge that a consideration of the above quoted provision of the will, as well as of the entire will, does not show any intention to have all Federal Estate Taxes paid out of the stocks and bonds, without any apportionment.

The Decree of the Orphans' Court, as thus modified, is affirmed. Costs shall be paid by Marguerite Leaver Macpeak.

---

* Erroneously shown in the Amended Proposed Distribution to the Executor's Account as "Cash due from Boyertown Burial Casket Co. $10,285.02."

** Excluding charitable gifts which have no pertinence in this case.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE COHEN:

I dissent from that part of the majority's decision which holds that the appellant, Mrs. Macpeak, was entitled under her father's will to the "cash (including bank deposits) of which he died possessed."

Their conclusion requires a strained interpretation of the provision of the will which bequeaths to Mrs. Macpeak "all articles of private possession." Certainly this descriptive class would not normally embrace "cash" and I do not believe that the failure to include "cash" among the enumerated items in the exclusionary clause indicates that the testator intended otherwise. Since "cash" could not be considered as an "article of private possession" in the first instance, it was manifestly not necessary specifically to mention this item in the clause of exclusion.