## Hoffmann Estate.

Argued March 15, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Valera Grapp,* with her *Max V. Schoonmaker,* for appellant.

*William McC. Houston,* with him *Houston & Houston,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 18, 1960:

Antonia Hoffmann, a resident of Allegheny County, died April 29, 1956. Her will—dated December 19, 1955—was the subject of a contest finally determined by this Court. (*Hoffmann Will,* 394 Pa. 391, 147 A. 2d 633)..

Under this will—a lawyer-prepared instrument—Mrs. Edward H. Grapp[1] was specifically bequeathed the stock[2] which testatrix owned in the J. M. Hoffmann Company, a closely held family corporation. Testatrix divided her residuary estate[3] in the following manner: one-quarter, respectively, to each of two nieces and a nephew, one-eighth to a grandniece (Mrs. Grapp's daughter) and one-sixteenth, respectively, to each of two great grandnieces (Mrs. Grapp's grandchildren). Mrs. Grapp was named executrix in this will.

---

[1] Mrs. Grapp is the widow of a deceased nephew of testatrix.

[2] 808 shares valued in the estate inventory at $210,080. The total inventory value of the estate was $519,049.

[3] The residuary estate included all testatrix' net estate with the exception of the shares of stock in the Hoffmann Company.

A federal estate tax in the amount of $115,878.59 was paid out of the residuary estate and so reflected in the first and final account filed in the Orphans' Court of Allegheny County. Certain residuary legatees filed exceptions to this account objecting to the delivery by Mrs. Grapp, as executrix, to herself, as legatee, of the shares of the Hoffmann Company stock without payment of her prorata share [$60,179.69] of the federal estate tax allegedly imposed upon her by the provisions of the Pennsylvania "Estate Tax Apportionment Act of 1951".[4] The court below sustained these exceptions and decreed that delivery of the shares of the Hoffmann Company stock to Mrs. Grapp was "subject to payment to the Accountant of amount of Federal Estate Tax and Interest due on legacy" [$60,179.69] and "also subject to payment to Accountant of amount necessary for any Federal Estate tax deficiency . . . ." From that portion of the decree Mrs. Grapp has taken this appeal.

Both the Estate Tax Apportionment Act of 1951, supra, and the Estate Tax Apportionment Act of 1937[5] created a presumption that proration of estate taxes is to be made in accordance with the statutory provisions unless the testator in his will has clearly indicated an intent inconsistent with such presumption. In *Stadtfeld Estate*, 359 Pa. 147, 152, 58 A. 2d 478, Mr. Justice (later Chief Justice) STERN stated: "The Act creates a presumption that a testator intends that proration should be made in accordance with its [the Act's] terms unless his will contains a specific provision, clearly expressed, inconsistent with such pre-

---

[4] Act of August 24, 1951, P. L. 1405, 20 PS §881 et seq. Under section 5 of that statute it is the duty of the fiduciary "to recover, from persons liable to apportionment or from whoever is in possession of property includible in the gross estate not in the fiduciary's possession, the amounts of tax apportionable thereto."

[5] Act of July 2, 1937, P. L. 2762, 20 PS §844.

sumption, and, to accomplish that result, his language must not be of doubtful import . . . .". To the same effect, see: *Harvey Estate,* 350 Pa. 53, 56, 57, 38 A. 2d 262; *Wahr Estate,* 370 Pa. 382, 88 A. 2d 417; *Edwards Estate,* 377 Pa. 606, 608, 105 A. 2d 312; *Leaver Estate,* 393 Pa. 55, 61, 142 A. 2d 165.[6]

In *Wright Estate,* 391 Pa. 405, 410, 138 A. 2d 102, Chief Justice JONES, speaking for this Court said: "The requirement of a like testamentary direction or indication in order to place the burden of the federal estate taxes on the residuary estate grew out of this State's first apportionment Act (1937), which was superseded and repealed by the present Estate Tax Apportionment Act of August 24, 1951, P. L. 1405. The Act of 1951, just as its predecessor had done, provides for the apportionment of the federal estate taxes among the persons interested in the property included in the gross estate but confirms to a testator the right to determine by his will how the federal taxes on his estate are to be borne. In construing the Act of 1937, this court held that its effect was to create a presumption (and the conception continues to obtain under the Act of 1951) that a testator intends to have the Act's provisions apply to his estate, recognizing, however, that the presumption prevails 'unless there is in the terms of the will some provision which is clearly inconsistent with such construction, and, when the will is construed as a whole, will override it.' Harvey Estate, 350 Pa. 53, 56, 38 A. 2d 262; Edwards Estate, 377 Pa. 606, 608, 105 A. 2d 312."

Our present inquiry is to determine whether the language of this will reveals an intent on testatrix' part that the statutory proration of the federal estate tax shall not take place.

---

[6] For examples of "clear expression" of a testator's intent see: *Horn Estate,* 351 Pa. 131, 135, 136, 40 A. 2d 471; *Audendried Estate,* 376 Pa. 31, 101 A. 2d 721; *Roth Estate,* 8 Pa. D. & C. 2d 70.

Appellant relies principally on the first paragraph of testatrix' will: "First: I direct that all my just debts, funeral expenses and any and all inheritance taxes be first paid out of my estate". Appellant contends that the phrase "any and all" considered in conjunction with the use of the word "taxes" in the plural indicates a testamentary intent that the residuary estate, rather than Mrs. Grapp, pay the Federal Estate tax. This contention is without merit. While "any" may mean "all", particularly when used conjunctively, and be comprehensive in scope,[7] and, while the use of the word "taxes" in the plural indicates a possible contemplation by testatrix of more than *one* tax, yet this comprehensive language was limited by testatrix' use of the word "inheritance". The testatrix did not direct the payment of "any and all taxes"; on the contrary, she directed the payment of "any and all *inheritance* taxes", a limitation and restriction not without meaning or significance. An inheritance tax is not an estate tax; the former is a tax on the right of succession to property and the latter is a tax on the transmission of property: *Wright Estate,* supra, 410, 411; *Harvey Estate,* supra, 58; *Mellon Estate,* 347 Pa. 520, 532, 32 A. 2d 749.

The scrivener, an experienced lawyer, in drafting this will employed the word "inheritance" to describe the character of the taxes contemplated by the testatrix for payment out of the residuary estate. Judge (later Justice) LADNER, in *Lucey Estate,* 63 Pa. D. & C. 645, presented with testamentary language much broader in scope, stated: (pp. 646, 647) : "The fact that Testator's will was dated in 1938, and a Codicil was made in 1942—both *after* the Apportionment Act of

---

[7] *In Re Brown's Estate,* 208 Pa. 161, 57 A. 360; *Glen Alden Coal Co. v. Scranton,* 282 Pa. 45, 48, 127 A. 307; *Harper v. Consolidated Rubber Co.,* 284 Pa. 444, 131 A. 356; *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595; *Commonwealth v. One 1939 Cadillac Sedan et al.,* 158 Pa. Superior Ct. 392, 45 A. 2d 406.

1937—is not without significance, id. We are all of the opinion that Testator did not clearly direct in his will that the Apportionment Act was not intended to apply. The clause relied on to exempt the nontestamentary estate mentions Federal taxes neither by name or description. The words used, viz., 'inheritance, succession or transfer' taxes are customarily understood to mean State taxes imposed on the beneficiaries and payable by them unless relieved by such a clause as here used, whereas the Federal estate tax is a tax imposed on the net estate. See Ely's Estate, 28 Pa. D. & C. 663; Newton's Estate, 74 Pa. Superior Ct. 361 where the distinction was clearly discussed and enlarged upon." In *Estate of Cora T. Burnett,* 43 N. J. Superior Ct. 534, 129 A. 2d 321, that court reached the same conclusion as in *Lucey* as to the construction of a will which directed the payment out of the residuary estate of ". . . all inheritance, legacy, succession or similar duties or taxes . . . ."

Nothing within the four corners of this will indicates any intent that the testatrix intended that the federal estate tax, entirely different in meaning or scope from an inheritance tax, should not be prorated.

*Baily's Estate,* 290 Pa. 3, 137. A. 733 and *Mack Estate,* 98 P.L.J. 81, relied on by appellant, are inapposite. *Mack Estate,* relying on *Jeffery's Estate,* 333 Pa. 15, 3 A. 2d 393, dealt with language entirely dissimilar from the language in this will. In *Baily's Estate* (decided prior to both Estate Tax Apportionment Acts), testator had directed that there be charged against a specific legacy payable to his son "a prorata share of any and all taxes, including inheritance taxes, that may be chargeable against my residuary estate." This Court, while recognizing that an inheritance tax was not a Federal Estate tax held that *other* portions of that will indicated an intent on the part of the testator that all taxes, whether inheritance or estate taxes, should be prorated.

An examination of this will fails to reveal any clear or necessary implication of an intent on testatrix' part to relieve the specific legatee of the Hoffmann stock of payment of her prorata share of the Federal taxes. In the absence of the expression of any such testamentary intent on testatrix' part the statutory presumption must prevail and Mrs. Grapp, as specific legatee, must pay her prorata share of the federal estate tax.

Decree affirmed.

Mr. Justice MUSMANNO dissents.