## Rudin Estate

*Leon H. Fox, Sr.*, and *Fox & Fox*, for accountants.
*Milton Jacobson*, for trustees.

TAXIS, P. J., October 22, 1962.—There is presented for determination in this estate a problem requiring interpretation of a tax clause contained in decedent's will.

Decedent created an irrevocable inter vivos trust on February 15, 1949, for the benefit of his minor daughter, Linda Flora Rudin, to which he transferred certain assets. He died on October 28, 1958, leaving a will dated December 20, 1948, with codicil thereto dated October 1, 1958, both of which were duly probated.

The commissioner of internal revenue upon the audit of the Federal estate tax return filed by the executors has contended that the corpus of this inter vivos trust and certain transfers allegedly made by this decedent in contemplation of death are includible in his gross estate for Federal estate tax purposes, and has asserted an estate inclusion therein. The executors contend that if the commissioner's asserted deficiency in Federal estate taxes should be sustained, any estate tax attributable to the inclusion in the gross estate of the corpus of the trust, and the said transfers made by decedent in his lifetime, should be paid by the trustees out of the corpus of the trust and by the respective transferees, who were the recipients of these transfers in contemplation of death.

The trustees under the inter vivos deed argue that the probate estate (i. e., executors) pay all taxes assessed against gross estate.

Paragraph tenth of decedent's will provided, inter alia, as follows: *"Tenth:* I direct that all estate, inheritance and succession taxes shall be paid out of the principal of my general estate to the same effect as if said taxes were expenses of administration, and all life insurance proceeds, legacies, devises and other gifts of principal and income made by this, my will, or by any codicil hereto, shall be free and clear thereof . . . "

The question is whether any Federal estate taxes that are now being asserted against the executors, attributable to the inclusion in gross estate of the corpus of the inter vivos trust and of any transfers

allegedly made by decedent in contemplation of death, are payable by the executors out of the assets of the probate estate, or should be apportioned to the respective nonprobate property.

The Pennsylvania Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, sec. 2, 20 PS § 882, provides inter alia, as follows: "Estate tax . . . shall be apportioned equitably, as near as may be in accordance with the principles hereinafter stated, among all persons interested in property includible in gross estate . . . and they shall pay the amounts apportioned against them."

Section 3 provides as follows: "A testator, settlor, or possessor of any appropriate power of appointment may *direct* how the estate tax shall be apportioned or allocated . . . Any such *direction* shall take precedence over the provisions of this act insofar as the *direction* provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the *direction* . . . " (Italics supplied).

The initial inquiry becomes: Is there such direction by decedent in paragraph tenth?

The Pennsylvania Supreme Court has held that the Estate Tax Apportionment Act creates a presumption that proration of estate taxes is to be made in accordance with the statutory provisions, unless the testator has clearly indicated an intent inconsistent with such presumption: Hoffman Estate, 399 Pa. 96 (1960); Harvey Estate, 350 Pa. 53 (1944); Stadtfeld Estate, 359 Pa. 147 (1948).

In examining paragraph tenth of decedent's will it indicates that decedent intended that life insurance proceeds should be the only nonprobate asset relieved of its proportionate share of the Federal estate tax. Although paragraph tenth of decedent's will begins with the wording, "I direct that all estate, inheritance

and succession taxes shall be paid out of the principal of my general estate . . . ", this direction is then *specifically* limited for the benefit of the assets mentioned thereafter by the words " . . . and that all life insurance proceeds, legacies, devises and other gifts of principal and income made by this, my will, or by any codicil hereto, shall be free and clear thereof."

A number of Pennsylvania lower courts have refused to apply the tax apportionment act where the testator's will included a general direction to pay all taxes out of the residue with no further language specifically pointing to nonprobate property: Widener Estate, 81 D. & C., 106, 67 Montg. 80 (1951) ; York Estate, 75 D. & C. 164 (1950) ; North's Estate, 50 D. & C. 703 (1944). But, where such general direction was limited, by subsequently designating the particular nonprobate assets which would be relieved of their proportionate share of the taxes, the courts have applied the apportionment act to the nonprobate assets, other than those not so specifically exonerated.

For example, in Gross Estate, 26 D. & C. 2d 735 (1962), the will contained the following provision: " 'I direct that all death, transfer or succession taxes due upon my estate or upon any trust created by me in my lifetime shall be paid by my executors. . . .' "

The principal of an inter vivos trust created by decedent's husband was included by the commissioner of internal revenue in decedent's gross estate for Federal estate tax purposes on the ground that for such purposes decedent was the real grantor. The executors then sought reimbursement from the trustees of that trust for the estate tax attributable to its inclusion. In his opinion Judge Saylor concluded that the tax clause in decedent's will indicated her intent that the apportionment act should apply to those items not specifically designated. Therefore the trust executed by her husband, which was included in decedent's

estate for Federal estate tax, must pay its share of such tax. The court said at page 741:

"Had she intended to have those words ['I direct that all death, transfer or succession taxes due upon my estate . . . '] include not only everything she owned at death but in addition property that under State and Federal law was taxable to her estate, she could and should have stopped there . . . The fact that she used the additional phrase . . . unmistakably indicates that the testatrix did not consider or intend that 'my estate' include the corpus of any trust no matter by whom created . . . . When she extended the field wherein a tax burden would be imposed upon property owned or possessed by her at her death, she did so only to the extent of including trust estates created by her, and her alone." See Kyle Estate, 1 Fiduc. Rep. 131 (1947).

Applying the rationale of these cases to the instant matter, if decedent had intended that the taxes on all nonprobate assets be paid by the executors out of the probate estate, he would have condensed paragraph tenth to read as follows: " I direct that all estate, inheritance and succession taxes shall be paid out of the principal of my general estate to the same effect as if said taxes were expenses of administration . . . " Decedent, however, chose to specifically designate the nonprobate property which would be relieved of its proportionate share of the Federal estate tax attributable to its inclusion in the gross estate. He did this by singling out "life insurance proceeds."

From a study of decedent's will, it is clear that he knew how to distinguish the various items of property. If he had intended that nonprobate property other than life insurance proceeds should be relieved of its pro rata share of Federal estate tax he would have specifically mentioned such property.

I conclude, therefore, that the provisions of the Estate Tax Apportionment Act of 1951 should apply to all nonprobate assets other than life insurance proceeds includible in decedent's estate for Federal estate tax purposes; and that any such taxes, if payable, which are attributable to the inclusion in decedent's gross estate, of the inter vivos trust created by decedent, and the transfers allegedly made in contemplation of death, should be paid pro rata by the recipients of such nonprobate property. The executors should not be obliged to pay the Federal estate taxes attributable to such nonprobate assets includible in the estate. . . .

### Order

And now, October 22, 1962, this adjudication is confirmed nisi.