## Jones Trust

*Desmond· J. McTighe* and *Francis I. Farley, McTighe, Koch, Brown & Weiss,* for petitioners.

*George H. Nofer* and *Schnader, Harrison, Segal & Lewis,* for respondents.

TAXIS, P. J., June 4, 1968—This petition was filed on September 20, 1967, by the executors of the Estate of Mary Elizabeth Jones, deceased. Mrs. Jones died on March 6, 1963, a resident of Philadelphia, and her estate has been administered there. Respondents, who are First Pennsylvania Banking and Trust Company and William A. Schnader, Esq., are trustees of a certain irrevocable inter vivos trust created on September 26, 1928, by Mrs. Jones as settlor.

The trust was funded with substantially all of the assets which Mrs. Jones acquired from the estate of

her husband, Newton Jones, who died June 8, 1928, which assets she obtained by electing to take against her husband's will. At decedent's death, the assets of the trust had a value of $259,644.39. The trust was created at the suggestion of Mr. Schnader, who was also one of the executors and a trustee of Mr. Jones's estate, so that Mrs. Jones might have more income than her husband had provided for her in his will, as well as a right to use principal if necessary. The assets awarded to the trust were worth approximately $119,000 at the time of distribution. From this fund, the trustees paid settlor $5,000 outright; they were required to purchase a home for her use, to cost not more than $15,000; and thereafter they were to pay settlor $4,500 per year from the income of the estate. Settlor retained a right to use principal " . . . because of sickness, injury or other emergency. . . ." And by paragraph fourth of the deed of trust settlor provided as follows:

"FOURTH: Out of the income of the property received by them [trustees] to pay all taxes by whatever authority levied upon the income derived by me from this estate; and all taxes levied upon any property belonging to the estate. . . ."

As part of their estate administration, petitioners filed a Federal estate tax return, and paid the sum of $9,612.14. In the return, petitioners disclosed the existence of the inter vivos trust and its terms, but did not pay any tax upon its assets, alleging that it was not subject thereto. The Internal Revenue Service did not agree, and after conferences and litigation involving counsel for both the estate and the trust, an ultimate deficiency of $35,788.20, reduced from an initial claim of $73,497.23, was agreed upon on June 19, 1967. Of this deficiency $33,050.25 was paid from trust assets, and it was then agreed by counsel that the present petition and answer would be filed to de-

termine where the ultimate liability for payment of this tax should be placed.

Petitioners, as executors, are vitally interested in this matter because the Internal Revenue Code places upon them a potential personal liability for unpaid estate taxes, where debts of an estate are discharged before providing in full for such tax: 31 U. S. C. A. §192. However, while it is the duty of the executors under Federal law to see that the tax is paid, where its ultimate burden is placed is determined by State law, and in Pennsylvania is fixed by either the expressed intent of the settlor or testator or the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS §881, et seq., in the absence of such expressed intent.

The trustees filed an answer denying that the language in paragraph fourth of the deed of trust rendered the provisions of the Estate Tax Apportionment Act, supra, inapplicable. The trustees concede that the assets of the trust are subject to tax apportionment, but only in the manner set forth by the act. In addition, the trustees counterclaim against the estate for $4,224.34 plus interest, which they allege to be the amount by which the trust's share of tax liability has been exceeded by the payment made, and which they now claim back from the estate under the provisions of section 5(a) of the Estate Tax Apportionment Act, supra.

Reduced to basics, therefore, the opposing contentions are simple and direct. Petitioners argue that they paid all of the Federal estate tax due on all of the assets of the probate estate; hence, the additional tax which became due thereafter by the inclusion in the Federally taxable estate of a portion of the assets of the inter vivos trust must all be paid from trust assets, under settlor's direction to pay all taxes levied on those assets from the trust. The trustees counter

that settlor's language does not express any intent to this precise effect, and under the Estate Tax Apportionment Act, supra, all assets subject to apportionment of estate tax must bear the liability therefor at the same rate.

Initially, it is clear that there is no justification for apportioning estate taxes under the provisions of the Estate Tax Apportionment Act, supra, other than on a pro rata basis. In the present case, the sequence of events makes the effect of the subsequent inclusion of trust assets on total liability strikingly clear; the tax due on the probate estate was completely determined and paid before any claim for tax on account of the trust assets was even asserted. Because of the graduated nature of the levy, the tax liability on $120,500.16 in probate assets was only $9,612.44; but the additional liability brought about by the inclusion of $129,862.30 in trust assets was some $35,788.20. Under such circumstances, the argument is appealing that a pro rata apportionment requires the parties interested in the probate estate to pay tax due solely from the inclusion of trust assets in the taxable estate; but it is necessary to remember that all parties in interest in both the probate and trust estates are being subjected to tax liability for the same reason, that is, that decedent has died. Section 4(a) of the Estate Tax Apportionment Act, supra, reads, in part, "Apportionment of the estate tax, . . . shall be made among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption. . . ." This language is clearly to the effect that the parties owning individual property interests of any type whatever, which are subject to tax apportionment, must each bear their share of the tax, to be determined only by the respective value of each interest: Cf. Anderson Estate, 373 Pa. 294, where

this rule was applied to a fund composed of testator's own probate assets plus assets from a marital deduction trust over which he had a power of appointment, each residuary or appointive legatee bearing his or her own proportion of the tax regardless of the nature of the interest in the fund.

The remaining question is whether settlor has expressed any intent to charge the trust assets with tax in a manner other than the pro rata method set forth in the Estate Tax Apportionment Act, supra. In the deed of trust, settlor instructed her trustees to pay ". . . all taxes levied upon any property belonging to the estate." In paragraph 19 of her will, Mrs. Jones provided, "All pecuniary and specific bequests and devises contained in this will shall pass to the donees thereof, free and clear of all estate, inheritance and succession taxes, which shall be charged upon and paid out of the residue of my estate." These two provisions constitute the sum and substance of decedent's expressions of intent concerning taxes. One may doubt, of course, that anything resembling the present problem was contemplated by settlor when the deed was executed in 1928; as the language used is in the same clause as that providing for the payment of income taxes from income, and also requiring the trustees to maintain and repair any real estate owned by the trust, the taxes referred to may well have been real estate taxes and similar levies. Be that as it may, however, the expression used by settlor was "all taxes" on "any property" and as correctly pointed out in petitioners' brief, "there are no more inclusive words than these."

It is our opinion, however, that when the tax liability in this estate is apportioned according to the act, the trustees have paid "all taxes" attributable to the trust. Section 3(a) thereof provides, in part, "A testator, settlor, or possessor of any appropriate power

of appointment may direct how the estate tax shall be apportioned . . ." In Hoffman Estate, 399 Pa. 96, this language was held to create a presumption that tax apportionment is to be made in accordance with statutory provisions, unless testator (settlor) clearly sets forth an intent inconsistent with such a presumption. Petitioners have cited several cases in contending that settlor here has set forth such an intent. All need not be discussed, but two have been relied upon substantially, and should be noticed. In Jeffery's Estate, 333 Pa. 15, apportionment of Federal estate tax between probate and inter vivos trust assets was decreed, where the trust deeds required the trustee to pay ". . . all costs, charges and expenses of said trust estate. . . ." The apportionment was made pro rata between the various interests, which is the result reached under the present Apportionment Act and urged in this case by the respondents. Actually, the pivotal point of the case was *whether* apportionment was required at all under the language used, not *how* it was to be made. A later case is Lander Estate, 416 Pa. 605, in which testatrix in her will directed ". . . that all . . . Federal Estate Taxes . . . be fully paid and satisfied by my Executors, as soon as conveniently may be, after my decease." The Supreme Court held that this language required the payment of all Federal estate taxes, on both probate assets and on a substantial amount of property jointly owned with right of survivorship by testatrix and certain relatives, from the residuary (probate) estate. As here, of course, the principal issue was whether the governing language was sufficient to rebut the applicability of the Estate Tax Apportionment Act, supra, and a majority of the court held that it was; but the result of that holding was to impose the entire Federal tax liability on the one fund, which both sides to the present action concede cannot be done here. The case is no authority in a

situation where apportionment is admittedly required.

Neither party to this litigation, nor the court, has found a reported case in which the precise contention of the petitioners has been passed upon. It seems clear, however, that settlor's general language would not be nearly sufficient to justify apportionment in a manner different from that prescribed by the act. We are faced here with circumstances such that the expression "all taxes" does not touch the core of the present problem, which is, simply, what "all taxes" are for apportionment purposes. In Stadtfeld Estate, 359 Pa. 147, 152, the court said, ". . . The Act creates a *presumption* that a testator intends that proration should be made in accordance with its terms unless his will contains a specific provision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import. . . ." See also Leaver Estate, 393 Pa. 55. Thus, while settlor provided that all taxes levied upon the trust assets should be paid from them, she did not prescribe further how "all taxes" were to be determined, if, as has now happened, a doubt should arise as to this point. She has not, in the words of the act, directed how the estate tax is to be apportioned; nor, in the language of Stadtfeld Estate, supra, has she clearly set forth a provision in the deed inconsistent with the presumption that the act is to be applied. Consequently, the Estate Tax Apportionment Act, supra, governs, and the prayer of the petition must be refused.

As to the amounts to be apportioned, respondents have provided on page five of their brief a calculation of the tax liabilities on the estate and trust, respectively, according to the Estate Tax Apportionment Act. This calculation sets forth that the value of the probate assets constitutes 48.13028 percent of the taxable estate before exemption, and the trust assets con-

stitute the balance, or 51.86972 percent of the taxable estate. Since the total tax liability was $45,400.24, that of the trust computes to $23,548.98 at the percentage rate applicable. To this must be added interest at six percent per annum from June 5, 1964, to August 5, 1967, or $4,474.31, yielding a total sum of $28,023.29 to be apportioned to the trust. The trust, however, has paid $33,050.25, and is therefore entitled to be repaid $5,026.96 by the estate. This sum is that which is claimed by the trustees in their counterclaim, allowing for the addition of interest.

We therefore enter the following

### ORDER

And now, June 4, 1968, the petition is dismissed; the Federal estate tax liability as finally determined, including interest, shall be apportioned between the probate estate and inter vivos trust, respectively, according to the provisions of the Estate Tax Apportionment Act of 1951; the counterclaim of the trustees is allowed, and it is ordered that petitioners pay to trustees the sum of $5,026.96, payment of which sum shall be in full discharge of the liability of petitioners to reimburse trustees for Federal estate tax paid by them but apportionable to the Estate of Mary Elizabeth Jones, deceased.

### SUR PETITION TO AMEND

TAXIS, P. J., January 29, 1969.—This opinion and order constitute the final disposition by this court of a petition filed on September 20, 1967, by the executors of the Estate of Mary Elizabeth Jones, deceased. The petition sought a decree directing the trustees of this *inter vivos* trust to pay from trust assets the entire amount of a certain Federal estate tax deficiency of $35,788.20, asserted by the Internal Revenue Service against the estate. The basis for the executors' position was that Mrs. Jones, in the trust deed, directed

her trustees to pay ". . . all taxes levied upon my property belonging to this estate . . . ," and that since the deficiency arose only after the Internal Revenue Service included the assets of the trust estate in decedent's taxable estate for Federal estate tax purposes, it should be borne entirely by the trust. In an opinion and order dated June 4, 1968, this claim was rejected by this court, and it was directed that the total Federal estate tax be apportioned between the probate estate assets and the trust assets *pro rata*, according to the provisions of the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS §881, et seq.

In his brief submitted on the above issue, counsel for the trust submitted calculations showing how apportionment should be made under the Estate Tax Apportionment Act, supra, provided that such was ordered by this court. Because we upheld the contentions of the trust, we adopted the calculations submitted and incorporated them in the order of June 4, 1968. The executors submitted no calculations, as they confined themselves to the issue of whether apportionment under the act was required at all. Subsequently, the executors requested an opportunity to present their own calculations of the way in which apportionment should be made. We have allowed this opportunity, as the matter is essentially one of law, and because there does not seem to be a governing precedent in the reported cases.

The relevant portions of the Estate Tax Apportionment Act are as follows:

"Sec. 1

. . .

(4) 'Gross Estate' means all property of every description required to be included in computing the estate tax.

. . .
"Sec. 2

Estate tax, . . . shall be apportioned equitably, as near as may be in accordance with the principles hereinafter stated, among all persons interested in property includible in gross estate, . . .

. . .
"Sec. 4

(a) *Basis of Apportionment.* Apportionment of the estate tax, . . . shall be made among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption. The values used in determining the amount of tax liability shall be used for this purpose.

(b) *Treatment of Deductions and Credits* . . . (1) Any interest . . . such as . . . charitable, public or similar gifts or bequests to the extent of the allowed deduction, shall not be included in the computation provided in subsection (2) of section four . . ."

We turn now to the facts. Decedent died March 5, 1963, and her executors filed a Federal estate tax return and paid a tax of $9,612.14. This was the full tax liability shown by the return; certain minor adjustments were made by the Internal Revenue Service, but for present purposes the value of the estate was found to be $120,500.16. In filing the return, the executors properly claimed the $60,000 exemption.

In this return, the executors also disclosed the existence of the *inter vivos* trust, which had been created by decedent on September 26, 1928. It had been funded essentially with property which decedent received by electing to take against the will of her husband. The executors further disclosed that, at the date of Mrs. Jones' death, the trust assets had a value of $259,-644.39, but did not include this amount in the taxable estate, contending that, "In view of the date of the

creation of this trust and its terms, this trust is not subject to tax."

The Internal Revenue Service, however, took the position that the trust assets were includible in their entirety in the taxable estate. By this, the taxable estate grew to $380,144.55. Subsequent negotiations led to the allowance of a charitable deduction (to the trust) of $59,824.21, resulting in a taxable estate before exemption of $320,320.34. Of this, $199,820.18 represented taxable trust assets, and $120,500.16 represented taxable probate estate assets.

The above determination of the Internal Revenue Service was properly appealed, the significant issue at all stages being whether the trust assets were includable for Federal estate tax purposes. Other aspects cut across this issue, however, because computation of the precise amount of the charitable deduction allowable to the trust depended, under the provisions of the Internal Revenue Code, upon the amount of tax to be apportioned to the trust. These problems, and the primary one of the taxability of the trust assets as well, were solved at one stroke by a compromise to the effect that the finally asserted tax deficiency should be reduced by one-third, to $35,788.20. The trustees, executors and the Federal Government all agreed to this solution with the result that a total tax of $45,400.24 has been paid, exclusive of interest.

While the figures are large, the issue raised by these facts is easily comprehended. The executors contend, on the basis of the amounts above stated, that their share of the total tax liability is represented by the value of the taxable probate assets of $120,500.16 divided by the value of all of the taxable assets, that is, $380,144.55 (all values taken before exemption). In this calculation, the executors make no allowance for the charitable deduction, but we think it must be recognized for present purposes under sec. 4(b) (1)

of the act set forth above, regardless of whose basic contention as to apportionment we would adopt. As so modified, then, we will recognize the executors' argument to be that the tax apportionable against their assets is 120,500.16/320,320.34 of the entire tax.

On the other hand, the trustees claim that the trust may be charged with tax only to the extent that the inclusion of its assets contributed to actual tax liability. They found this argument on two observations. The first is that a total Federal estate tax of $45,400.24 can stem only from a net taxable estate of $250,362.46, this being determined by direct computation using the applicable tax rates. The second is that there is no provision in Federal tax laws which permits the taxation of an estate at rates other than those set up by the code, and that compromise in disputed tax cases is therefore based on a modification or adjustment to the value of the assets which are taxed. From these premises, they argue that the tax to be apportioned to the executors is represented by the ratio 120,500.16/250,362.46. It is evident that use of the trust's computation would result in a reduction of several thousand dollars in its tax liability.

We have not been supplied with any statement by the Internal Revenue Service of what the taxable estate was determined to be. However, it would seem a mathematical necessity for it to conform to the calculations furnished by the trust. We recognize that no legal basis apparently exists for taxing part but not all of the trust assets, but we find little difficulty with this, since partial inclusion of the trust assets was used solely as a vehicle for compromise; no distinction between types of trust assets as such is here asserted as a basis for a particular method of apportionment. Under such circumstances, we must adopt the position of the trust, under the mandate of the Estate Tax Apportionment Act, supra, to apportion tax liability

on the basis of the value of property included in computing the estate tax, and using the values which determined the said tax liability.

There is an additional consideration. By its terms, the apportionment act is for an "equitable" purpose. It is designed in the mold of equitable contribution generally, which distributes burdens in proportion to benefits. From this approach, we believe the result previously reached on the statutory language to be the only one which could be reached in equity. The only issue of substance in the tax dispute was whether any estate tax whatever was due from the trust. The compromise reached on this issue concerned only the assets of the trust (there was no question about the full includability of the probate estate assets) and it is evident therefore that the trust assets did not contribute to the total tax liability dollar for dollar as much as did the probate assets. If the executors' position were adopted, part of the tax saving obtained by the compromise would go to reduce the tax on the probate assets as well. This would be inequitable.

In so ruling, we recognize that the tax burden on the probate assets is increased by the inclusion of even part of the trust assets in the taxable estate, and will be increased even more by our exclusion of part of the trust assets from the apportionment computation. But this stems from the fact that the Federal estate tax is a graduated levy, and about this nothing can be done by state courts or statutes. It is undeniable that one who has an interest in a small taxable estate will have more remaining to him than one who has the same interest in a large taxable estate; but this result is not made more fair by inequitable apportionment where state courts can exercise control.

Accordingly, the petition to amend the order of June 4, 1968, is dismissed, and said order is declared to be the final one in this proceeding.